**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT NOCK, an individual, on his own behalf and on behalf of all others similarly situated, | No. 23-1042 |
|         Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*** |
|    v. | |
| SPRING ENERGY RRH, LLC d/b/a SPRING POWER & GAS, RRH ENERGY SERVICES, LLC and RICHMOND ROAD HOLDINGS, LLC, Delaware limited liability companies | **CLASS ACTION** |
| | <u>**DEMAND FOR JURY TRIAL**</u> |
|         Defendants. | |

Plaintiff Robert Nock ("Plaintiff" or "Nock"), by and through his undersigned counsel, and files this Original Complaint against Spring Energy RRH, LLC d/b/a Spring Power & Gas ("Spring Power, RRH Energy Services, LLC, ("RRH") and Richmond Road Holdings, LLC ("Richmond") (collectively "Defendants"), to stop Defendants' practice of making unsolicited telemarketing calls to telephone numbers listed on the national Do-No-Call Registry, using false outgoing telephone numbers ("spoofed" telephone numbers), and to obtain redress for all persons injured by this conduct. Plaintiff, for his class action complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

<u>**NATURE OF THE CASE**</u>

1.    Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited, "spoofed" telemarketing calls made by or on behalf of Defendants which deceptively market Defendants' services.

2.      Plaintiff, individually, and for class members, seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

## PARTIES

3.      Plaintiff Robert Nock is a resident of the United States. He is the subscriber and user of residential telephone numbers listed on the national Do Not Call list, on which he received numerous unsolicited calls from Defendants.

4.      Defendant Spring Power is a Delaware limited liability company with its principal place of business located at 111 East 14th Street, Suite 105, New York, New York 10003. Spring Power does business as "Spring Power & Gas." Spring Power is licensed to provide retail electricity and natural gas in the state of New Jersey and in the state of Maryland. Spring Power has an affiliate company, Kiwi Energy NY LLC d/b/a Kiwi Energy ("Kiwi Energy") which is licensed to provide energy services in the state of New York.

5.      Defendant RRH Energy Services, LLC ("RRH") is a Delaware limited liability company with its principal place of business located at 111 East 14th Street, Suite 105, New York, New York 10003. RRH is a New York-based energy services management company operating several brands, including Spring Energy and Kiwi Energy, across multiple states.

6.      Defendant Richmond Road Holdings, LLC ("Richmond") is a Delaware limited liability company.  Richmond is the parent company of both Spring Power and RRH.  Richmond operates businesses across several states, including Kiwi Energy in New York and Ohio, and Spring Power in New Jersey, Pennsylvania and Maryland. Richmond may be served with process through its registered agent for service of process, The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, DE 19801.

2

## JURISDICTION AND VENUE

7.      The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

8.      This Court has personal jurisdiction over the Defendants because Defendants conduct business in the state of New York and maintain their principal place of business in New York.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District.

## COMMON ALLEGATIONS

### The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

10.      "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

11.      In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

12.      The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action for damages and injunctive relief for

such DNC violations. 47 U.S.C. § 227(c)(5).

13.     The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

14.     The Federal Communications Commission ("FCC") has promulgated regulations under the TCPA which also require that sellers and telemarketers maintain an "internal do-not-call list" ("IDNC" list) — i.e., a "list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]" — and further prohibits sellers from "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). Cf. 47 U.S.C. § 227(b)(1).

15.     The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

16.     The TCPA reflects Congress's intent to preserve the social norms that Americans answer calls to their telephone numbers. Abusive and deceptive robocalls like those used by

4

Defendants are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often inundates our mailboxes").

17.    The situation has greatly worsened since the TCPA was first passed. In 2018, the House of Representatives received testimony that "approximately 40% of all calls on the landline network are unwanted robocalls," and that "the number of identified scam calls [is expected] to rise . . . to as high as 15% or 16% [.]" Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. On Digital Commerce and Consumer Protection, 115th Cong. 1 (testimony of Aaron Foss), https://energycommerce.house.gov/sites/democrats.energycommerce.house.gov/files/documents/Testimony-Garr-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27.pdf;  Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. On Digital Commerce and Consumer Protection, 115th Cong. 11 (testimony of Scott Hambuchen),https://energycommerce.house.gov/sites/democrats.energycommerce.house.gov/files/documents/Testimony-Hambuchen-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27_1.pdf.

Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

## DEFENDANT'S BUSINESS

18.     Spring Power provides retail electricity and natural gas services in New Jersey, Maryland, and Pennsylvania, pursuant to licenses maintained with the relevant regulatory agencies in those states. Kiwi Energy provides retail electricity and natural gas services in New York and Ohio, under analogous licenses. On information and belief, Spring Power and Kiwi Energy are simply corporate shells used to (1) hold and maintain their gas and electricity licenses; (2) collect customer payments; and (3) trade energy supplies. They have few (if any) employees, and little other property, operations, or business functions.

19.     On information and belief, Richmond and RRH operate Spring Energy and Kiwi Energy as different brands in different markets. On information and belief, Richmond and RRH employs, controls, and supplies the individual natural persons—the officers, employees, and agents—who actually operate and control Spring Power's day-to-day business. On information and belief Richmond and RRH supply the personnel who physically execute contracts or regulatory certifications for Spring Power, and operate Spring Power's business, including its financial forecasting and budgeting, business development and planning for new and established companies, procurement, risk management, new market entry, sales strategy and growth, operations and database solutions, marketing and public relations strategy, and value-added services and partnerships.

20.     Because Defendants maintain the same natural persons as their personnel who operate their businesses in common, and who are responsible for Defendants' conduct, it is not

possible to attribute the actions of these individuals to one Defendant without also attributing them to all Defendants.

## DEFENDANT'S ILLEGAL TELEMARKETING CALLS

21.     In particular, on information and belief RRH operates and controls telemarketing campaigns to acquire additional residential consumer customers for Spring Power. On information and belief RRH operates Spring Power's comprehensive quality assurance program whereby it trains all its agents through its internal and external sales onboarding process, regularly investigates the activities of its sales agents and performs audits when complaints arise, and provides weekly training alerts (which are certified by the trainees). Senior personnel at RRH review the results from quality assurance program weekly.

22.     Defendants solicit potential residential customers in several states to purchase Spring Power's products and services through aggressive, outbound telemarketing campaigns. These telemarketing campaigns are conducted for the benefit of and on behalf of Defendants, in order to enroll new customers for Spring Power. All Defendants operate, manage, monitor, and control these telemarketing campaigns.

23.     Defendants systemically fail to honor the national Do Not Call List. Defendants do not have express consent to call telephone users whose telephone number is on the Do Not Call List.

24.     Defendants and their agents make repeated and unwanted calls to consumers whose telephones service numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the National Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

25.     Defendants also utilize misleading or inaccurate caller identification information,

including "spoofed" telephone numbers with local area codes (that is, replacing the actual

originating number displayed to recipients caller ID systems—which could be used to reliably

identify the vendors' calls—with a falsified ostensible outgoing telephone number). Defendants'

use of spoofing entices recipients to answer telephone calls that they would not otherwise

answer, and makes it difficult to attribute particular calls to Defendants. These practices allow

Defendants to evade accountability for their telemarketing activities, and make it difficult for call

recipients to avoid or otherwise respond to Defendants' calls (for instance, asking to be placed on

Defendants' own Do Not Call list). Call recipients are only able to avoid Defendants' unwanted

calls if they risk missing wanted calls, and cannot identify which companies they have instructed

not to call them.

26.     Defendants and their agents use pre-recorded and/or artificial voices to make

telephone calls to consumers *en masse* to promote and market Spring Power's products and

services.

27.     By making these robocalls, and ignoring the national Do-Not-Call registry and Do

Not Call requests, Defendants have caused Nock and Class Members actual injury and harm,

including the aggravation, nuisance, and invasion of privacy that results from the receipt of

unsolicited and harassing telephone calls.

28.     To the extent that Defendants used third-party telemarketers to make any calls to

Nock or Class members , they were and are at all relevant times, acting as actual agents,

ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and

the acts alleged herein occurred within the course and scope of said agency, employment,

partnership, joint venture, conspiracy or enterprise, and with the express and/or implied

permission, knowledge, consent, authorization and ratification of Defendants.

29.     Defendants also operate, manage, monitor, and/or control these telemarketing campaigns through the data collected about the telemarketing campaigns, and the feedback Defendants give to the telemarketers (including, ultimately, the commissions Defendants pay to their telemarketers). Defendants are legally responsible for ensuring they and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls. Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions. Defendants also ratified any agents' conduct by accepting the benefits of the calls, including but not limited to enrolling customers generated by these calls into Spring Power's contracts, despite being aware that these calls were unsolicited and made in violation of the TCPA.

30.     There is no material distinction between telemarketing calls made by Defendants and/or by telemarketers who are technically third parties. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 136, 138 (E.D.N.Y. 2015) (sellers "face vicarious liability 'under a broad range of agency

principles, including not only formal agency, but also principles of apparent authority and ratification,'" *In Dish Network, LLC*, 28 FCC Rcd. at 6584 ¶ 28, applying Restatement (Third) Agency § 1.01 (2006) to vicarious liability under TCPA. *See also Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

31.     Each of these allegations are "alternative" theories of liability whenever not doing so would result in a contradiction with the other allegations.

## PLAINTIFF'S INDIVIDUAL ALLEGATIONS

32.     Nock has two residential telephone numbers, (443) 523-XXXX ("443 Number") and (410) 289-XXXX ("410 Number"). Nock's 443 Number and 410 Number have been on the National Do Not Call Registry for several years and at all times relevant to the claims made in this lawsuit.

33.     In or around April 2021, Nock received two or more unsolicited and unauthorized telemarketing calls to his 443 Number by or on behalf of Defendants promoting Spring Power's products and/or services. Nock also received two or more unsolicited and unauthorized telemarketing calls to his 410 Number by or on behalf of Defendants promoting Spring Power's products and/or services.

34.     During its April 2021 telephone marketing campaign, Defendants used an artificial or prerecorded voice to call Nock. Defendants also used spoofed area codes for its calls to disguise their true origin.

35.     Nock's telephone numbers have been registered with the National Do-Not-Call Registry for years. Nock uses these telephone numbers for residential purposes. Nock never

provided his telephone numbers to Defendants or their agents for any purpose whatsoever as he never had a business relationship with them. Defendants and their agents did not otherwise obtain Nock's prior express consent to make telemarketing calls to his telephone numbers. Nock was not a business associate, customer, or other person having an established relationship with Defendants. Defendants did not call to collect an existing obligation, and Nock did not request Defendants to call (and, indeed, he was not aware of Defendants prior to these calls). Defendants never had valid consent to call Nock. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller").

36.     Defendants' telemarketing inflicted actual injury on Nock by invading his privacy. Defendants caused Nock the harm inherent in unsolicited, harassing, and deceptive telemarketing calls (including emotional distress, aggravation, nuisance, loss of use of his telephone, wasted time, invasion of privacy, and diverting attention away from his daily activities). However, Nock does not seek actual damages in excess of the statutory damages authorized under the TCPA.

**VII.**

**CLASS CERTIFICATION ALLEGATIONS**

37.     **Class Definition:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following three Classes:

**NDNC Class:**

All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

**IDNC Class:**

All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class, during which time(s) Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

**Pre-Recorded Call Class:**

All persons in the United States who received one or more telephone calls to a residential telephone number using an artificial voice or pre-recorded voice to deliver a message, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

**Maryland NDNC Class:**

All persons in the State of Maryland who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

**Maryland IDNC Class:**

All persons in the State of Maryland who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class, during which time(s) Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

**Maryland Pre-Recorded Call Class:**

All persons in the State of Maryland who received one or more telephone calls to a residential telephone number using an artificial voice or pre-recorded voice to deliver a message, from four years prior to the date of Plaintiff's original complaint through the date the Court certifies the class.

Excluded from the Classes are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family.

Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

38.    **Numerosity:** The exact number of Class members is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents' records. The Classes are so numerous that joinder of all members is impractical. On information and belief, Plaintiff alleges that there are at least forty members of each Class.

39.    **Commonality:** Plaintiffs and the Class members share common experiences receiving calls by or on behalf of Defendants. They received multiple, incessant, uninvited calls for the purposes of marketing Defendants' services to their residential telephone numbers.

40.    **Predominance:** In addition, common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the class member. The predominant common questions include:

a.    Whether Defendants and/or their agents made telephone calls to members of the NDNC Class whose telephone numbers were registered with the national Do-Not-Call registry;

b.    Whether Defendants and/or their agents made telephone calls to IDNC Class members while Defendants had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d);

c.    Whether Defendants and/or their agents utilized artificial or pre-recorded voices to deliver messages to the Pre-Recorded Call Class;

c.    Whether Defendants are vicariously liable for any calls by their agents;

d.    Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Plaintiffs and Class members;

e.    Whether Plaintiffs and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiffs and Class members are entitled to treble damages;

f.      Whether Plaintiffs and Class members are entitled to injunctive relief and attorneys' fees and costs.

41.    **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief they seek is common to the Class.

42.    **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

43.    **Predominance and Superiority:** The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

44.    **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

45.    **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and Class members for which they have no adequate remedy at law.

**FIRST CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c) Against All Defendants By Plaintiff, Individually, and on Behalf of the NDNC Class)**

46.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

47.    Defendants are "persons" as defined by 47 U.S.C. § 153(39).

48.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id*.

49.    The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any

telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

50. On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other Class members.

51. Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and DNC Class members within a 12-month period without their legally effective consent to receive such calls. Plaintiff and DNC Class members never provided any form of consent to receive telephone calls from Defendants, and Defendants do not have legally valid evidence of such consent. Defendants did not have an established business relationship with Plaintiff and the other DNC Class members.

52. Defendants' violations are willful because Defendants knew or should have known that Plaintiff and DNC Class members had not given prior express consent to receive telemarketing calls made to telephone numbers placed on the Do Not Call List and that Defendants called such telephone numbers. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

53. Plaintiff, on his own behalf, and on behalf of the other DNC Class members,

seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**SECOND CAUSE OF ACTION**
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d) Against All Defendants By Plaintiff, Individually, and on Behalf of the IDNC Class)**

54.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). The FCC regulation also provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1)    Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2)    Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> ….
>
> (4)    Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges

47 C.F.R. § 64.1200(d). Again, this regulation also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

56.     On information and belief, Defendants and/or their agents also violated 47 C.F.R. § 64.1200(d)(1) and/or (2) by failing to maintain a written policy for maintaining a do-not-call list and/or informing and training all personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

57.     On information and belief, Defendants and/or their agents also violated 47 C.F.R. § 64.1200(d)(4) by failing to disclose the name of the individual caller, Spring Power's name, and a telephone number or address at which Spring Power could be contacted. Defendants also spoofed the outgoing telephone numbers used to call Nock and DNC Class members, and/or their telemarketers failed to identify Defendants.

58.     Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and DNC Class members within a 12-month period without their legally effective consent to receive such calls. Plaintiff and DNC Class members never provided any form of consent to receive telephone calls from Defendants, and Defendants do not have legally valid evidence of such consent. Defendants did not have an established business relationship with Plaintiff and the other DNC Class members.

59.     Defendants' violations are willful because Defendants knew or should have known that they failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above, but still engaged in telemarketing. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

60.     Plaintiff, on his own behalf, and on behalf of the other DNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

**THIRD CLAIM FOR RELIEF**
**Violation of 47 U.S.C. § 227(b)(1)(B) Against All Defendants**
**by Plaintiffs, Individually, and on Behalf of the Pre-Recorded Call Class**

61.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Pre-Recorded Call Class.

62.     The TCPA prohibits certain uses of telecommunication equipment that would interfere with telephone service subscribers' privacy and/or property rights with respect to their telephone. In particular, the TPCA makes it unlawful for any person:

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B).

63.     The TCPA provides telephone service subscribers a private right of action for injunctive relief and statutory damages for violations of 47 U.S.C. § 227(b) or "regulations prescribed under" 47 U.S.C. § 227(b) "to enjoin such a violation" and/or to recover actual damages or "$500 in damages for each such violation," as well as treble damages where the "court finds that the defendant willfully or knowingly violated [47 U.S.C. § 227(b).]" 47 U.S.C. § 227(b)(3).

47     Spring Power and its agents also utilized artificial and/or prerecorded voice messages in calls to residential telephones of Plaintiffs and Pre-Recorded Call Class members.

48     Spring Power and its agents do not and did not obtain legally effective prior express consent to call the Pre-Recorded Call Class members' residential telephone numbers.

49      Spring Power and its agents violated 47 U.S.C. § 227(b)(1)(B) by placing telephone calls to the residential telephone numbers of Plaintiffs and the other members of the Pre-Recorded Call Class using an artificial or prerecorded voice without their prior express written consent.

50      Spring Power willfully violated 47 U.S.C. § 227(b)(1)(B) because it knew that Plaintiff and the other Pre-Recorded Call Class members had not given prior express consent to receive calls made using an artificial, and/or prerecorded voice and that Spring Power and its agents used these methods to call the residential telephone numbers of Plaintiff and the other Pre-Recorded Call Class members. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

51      Plaintiff, individually, and on behalf of the other members of the Pre-Recorded Call Class, seek to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(b)(3) against Spring Power.

**FOURTH CLAIM FOR RELIEF**
**Violation of Md. Code, Com. Law, § 14-3201 Against All Defendants**
**by Plaintiffs, Individually, and on Behalf of the Maryland NDNC Class**

52.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Maryland NDNC Class.

53.     Md. Code, Com. Law, § 14-3201 provides that a person may not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

54.    Md. Code, Com. Law, § 14-3202 provides that an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover: (1) Reasonable attorney's fees; and (2)  Damages in the amount of the greater of:  (i) $500 for each violation; or (ii)    Actual damages sustained as a result of the violation.   This statute further provides that each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation.

55.    For each violation set forth in Plaintiff's First Claim for Relief, Plaintiff asserts a claim for statutory damages and reasonable attorneys' fees on behalf of the Maryland NDNC Class for a corresponding violation of Md. Code, Com. Law, § 14-3201.

**FIFTH CLAIM FOR RELIEF**
**Violation of Md. Code, Com. Law, § 14-3201 Against All Defendants**
**by Plaintiffs, Individually, and on Behalf of the Maryland IDNC Class**

52.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the members of the Maryland IDNC Class.

53.    Md. Code, Com. Law, § 14-3201 provides that a person may not violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).

54.    Md. Code, Com. Law, § 14-3202 provides that an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover: (1) Reasonable attorney's fees; and (2)  Damages in the amount of the greater of:  (i) $500 for each violation; or (ii)    Actual damages sustained as a result of the violation.   This statute further provides that each prohibited telephone solicitation and each prohibited practice during a

telephone solicitation is a separate violation.

55.     For each violation set forth in Plaintiff's Second Claim for Relief, Plaintiff asserts

a claim for statutory damages and reasonable attorneys' fees on behalf of the Maryland IDNC

Class for a corresponding violation of Md. Code, Com. Law, § 14-3201.

**SIXTH CLAIM FOR RELIEF**
**Violation of Md. Code, Com. Law, § 14-3201 Against All Defendants**
**by Plaintiffs, Individually, and on Behalf of the Maryland Pre-Recorded Call Class**

52.     Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of himself and the

members of the Maryland Pre-Recorded Call Class.

53.     Md. Code, Com. Law, § 14-3201 provides that a person may not violate the

Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal

Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations

Rule (47 C.F.R. Part 64, Subpart L).

54.     Md. Code, Com. Law, § 14-3202 provides that an individual who is affected by a

violation of this subtitle may bring an action against a person that violates this subtitle to recover:

(1) Reasonable attorney's fees; and (2)  Damages in the amount of the greater of:  (i) $500 for

each violation; or (ii)    Actual damages sustained as a result of the violation.   This statute

further provides that each prohibited telephone solicitation and each prohibited practice during a

telephone solicitation is a separate violation.

55.     For each violation set forth in Plaintiff's Third Claim for Relief, Plaintiff asserts a

claim for statutory damages and reasonable attorneys' fees on behalf of the Maryland Pre-

Recorded Call Class for a corresponding violation of Md. Code, Com. Law, § 14-3201.

WHEREFORE, Plaintiff Robert Nock prays that the Court enter judgment and orders in their favor and against Defendant as follows:

a.    An order certifying the proposed Classes, directing that this case proceed as a class action, and appointing Plaintiff and his counsel to represent the Classes;

b.    Statutory damages as provided under 47 U.S.C. § 227(c)(5), including trebled damages for willful and knowing violations, against Defendants in favor of Plaintiff and the NDNC and IDNC Classes;

c.    Statutory damages as provided under 47 U.S.C. § 227(b)(3), including trebled damages for willful and knowing violations, against Defendants in favor of Plaintiff and the Pre-Recorded Call Class;

d.    Statutory damages as provided under Md. Code, Com. Law, § 14-3202 including trebled damages for willful and knowing violations, against Defendants in favor of Plaintiff and the Maryland NDNC, Maryland INDC, and Maryland Pre-Recorded Call Classes

e.    Injunctive relief against Defendants in favor of Plaintiff and the members of the Classes, under 47 U.S.C. § 227(b)(3) and/or § 227(c)(5); and

f.    Such other and further relief as this Court may deem appropriate.


Dated: February 8, 2023        By: ___/s/ Jeremy R. Wilson_____
                        Jeremy R. Wilson (pro hac vice application pending)
                        Texas Bar No. 24037722
                        2501 N. Harwood St., Suite 1250
                        Dallas, TX. 75201
                        jeremy@wilsonlawtx.com
                        Telephone: (214) 662-8456
                        Facsimile: (214) 594-8844

                        *Attorneys for Plaintiff Robert Nock, on his own behalf, and behalf of all others similarly situated*

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.


Dated: February 7, 2023

By:   /s/ Jeremy R. Wilson
Jeremy R. Wilson (pro hac vice application pending)
Texas Bar No. 24037722
2501 N. Harwood St., Suite 1250
Dallas, TX. 75201
jeremy@wilsonlawtx.com
Telephone: (214) 662-8456
Facsimile: (214) 594-8844

*Attorneys for Plaintiff Robert Nock, on his own*
*behalf, and behalf of all others similarly situated*


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of April 2023, I filed the forgoing document through the Court's CM/ECF electronic case filing system which will automatically serve a copy on all counsel of record in this action.

      /s/ Jeremy R. Wilson
Jeremy R. Wilson

24