# PRESTON/LAW OFFICES

4054 McKinney Avenue, Suite 310 / Dallas, Texas 75204
(972) 564-8340 / (866) 509-1197 / ep@eplaw.us

**Via ECF**
The Honorable Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse, Room 1960
500 Pearl Street
New York, New York 10007-1312                                              January 17, 2024

      Re:    *Nock v. Spring Energy RRH, LLC*, No. 1:23-cv-01042, pending in the United
                 States District Court for the Southern District of New York

Your Honor,

      This firm (together with Wilson Law) represents Plaintiff Robert Nock ("Plaintiff" or "Nock") in this case. Nock responds to Defendants Spring Energy RRH, LLC, RRH Energy Services, LLC, and Richmond Road Holdings, LLC's (collectively "Defendants") January 12, 2024 letter ("Letter") (ECF No. 55). Plaintiff opposes Defendants' transparent attempt to wall off evidence of willful TCPA violations, and asks the Court to deny Defendants' motion.

      In this class action lawsuit, Nock contends that Defendants called him in violation of the Telephone Consumer Protection Act to solicit him to enroll in their gas and electric services. Defendants' agents did so through a surreptitious scheme in which Defendants' door-to-door agents called potential customers from call centers instead of visiting them in person. When consumers agreed to enroll, Defendants' telemarketers arranged subsequent verification calls from a third-party verifier (TPV), in order to create an independent record of consumers' ostensible consent to enroll with Defendants. In this scheme, their vendors coached consumers to state that they met with Spring Power's agent at their doorstep when these verification calls were recorded.[1] (*See* ECF No. 48-4 ¶3 (Nock Decl.).) Defendants' scheme manufactures these falsified recordings at industrial scale, and Nock has produced to Defendants call records which contain evidence of Defendants' scheme. (*See* ECF No. 48 at 3.)

      Nock has consistently maintained that Defendants' agents disguised their telemarketing campaigns as door-to-door sales. (ECF No. 35 at 1; ECF No. 48 at 3.) Defendants' instant motion relies on a May 2021 email from Endurance Sales & Marketing LLC ("Endurance"). (ECF No. 55-2.) This 2021 email shows that Defendants *knew* that telemarketers working with Endurance and using the scheme above to disguise their telemarketing calls had enrolled customers with Defendants from Pakistan. (*Id*. at 2-5.) Although this 2021 email wholly vindicates Nock's claims, Defendants have repeatedly denied Nock's claims on the record, leading the Court to quash Nock's subpoena and to bifurcate discovery. (*See* ECF Nos. 39, 52.) Critically, the 2021 email shows that much of the record on which the Court's prior orders were

---

[1]    Disguising these telemarketing calls as door to door sales activity allows Defendants to circumvent critical Maryland consumer protection regulations. *See* Code Md. Regs. § 20.53.20.08(C)(4)(b)(iii) (requiring that an "independent third party verifies the contract or records the entire telephone conversation").

based (such as Defendants' testimony) was false and misleading.[2] Eventually, of course, Defendants conceded "bifurcation [was] no longer tenable." (ECF No. 53 at 1.) In their motion, Defendants have reversed course and demand to curtail discovery once again. Defendants should be estopped from doing so. *Cf. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Now, Defendants ask the Court to limit discovery to: (1) interactions with Endurance; and (2) "the time-frame of [their] relationship with Endurance" (ostensibly, until November 2021). Defendants justify these restrictions on the basis that "it is undisputed that [Nock's] claims [] are attributable to the unauthorized actions of Endurance." (ECF No. 55 at 1, 3.)

This is another false record. Nock has obtained a declaration from an absent class member, Roland Camunas, which reveals that one of Defendants' other vendors engaged in the exact same scheme in the spring of 2022, after Defendants say their relationship with Endurance ended. (Ex. 1 (Camunas Decl.); ECF No. 18 ¶37 (defining national TCPA classes).) Camunas testifies that he received calls on behalf of Spring Power in 2022 (while listed on the DNC list) in which the caller instructed him to say during the subsequent verification call that he was visited at his door. (Ex. 1 ¶¶4-5.) The motion claims Defendants enrolled Camunas "during a verifiable door-to-door sale," and Defendants' counsel previously told Camunas that "Spring's records indicate that [he] enrolled via a door-to-door sales channel, not through any telephone sales efforts." (Ex. 1 (internal Ex. 3 at 1-2).) But Defendants offer no evidence to support these claims, or to contradict Camunas's testimony and his corroborating documents. When they filed their motion, Defendants had a choice about whether or not to include evidence to contradict Camunas, and they made a deliberate choice not to do so. The prospect that two rogue vendors independently infiltrated into unsuspecting Defendants' service and implemented the same baroque scheme to disguise their telemarketing calls beggars belief. This record has more than enough evidence that a jury could reasonably infer that Defendants were the source of the scheme to disguise their telemarketing.[3] Defendants' motion seeks to wall off discovery on the vendor who called Camunas and every other vendor which used this scheme to conceal TCPA violations, denying Nock a fair opportunity to gather further evidence that Defendants willfully violated the TCPA through their involvement in the scheme.

---

[2] (*Cf.* Ex. 9 *with* ECF No. 31 at 3 (Defendants "confirmed that no offshore calling vendors were used"); ECF No. 44, Ex. A, June 5, 2023 Hasiak Decl. ¶25 ("none of the Defendants employed vendors in any foreign country"); (ECF No. 31 at 5 ("Spring Energy has confirmed that in BG&E's territory in April 2021, no customer enrolled with Spring Energy through any telemarketing calls"); ECF No. 44, Ex. A, June 27, 2023 Hasiak Decl. ¶9 ("Spring Energy has no record of any customers enrolled through any [] sales agent with [the names listed in Nock's discovery] during the April 2021 time period"). *See also* ECF No. 30 at 2 (statement that Defendants were not "using any other vendors to make telemarketing calls at the time"); ECF No. 49-1 at 17:25:18-6 (counsel's statement that "not a single person [] enrolled with Spring Power & Gas through telemarketing").)

[3] Hence, Defendants' authority is factually inapposite. *Cf. Mora v. Zeta Interactive Corp.*, No. 16-001982017 WL 1187710, *5 (E.D. Cal. Feb. 10, 2017) (no "evidence [] that the dialing system used by" subsidiary that called plaintiff was "also used by the other subsidiaries").

The Honorable Robert W. Lehrburger
January 17, 2024
Page 3 of 4

Defendants previously sought to limit discovery beyond November 2021 in ways which were much less transparent than the instant motion. In December 2023, Defendants provided Nock a "detailed log [] of email communications between Defendants and Endurance," and represented to Nock that these documents reflected a "search [] performed on Defendants' entire email system" and "include[d] all emails with [Endurance] during the class period." (Ex. 2 at 1, 4.) **Defendants' December 2023 log indicated that the last email between Defendants and Endurance was sent in November 2021**. Days later, Google produced email headers which revealed email traffic between Defendants and Endurance **through October 2023**. (*See* Ex. 3; Ex. 4 at 1, 16.) During the parties' January 9 call, Defendants said they would provide a report on "the search log inconsistency with the Google subpoena documents" by January 11, but have offered no substitute deadline since that deadline passed. (Ex. 5 at 5; Ex. 6 at 1, 3.) The Google headers show Defendants and Endurance sent email to each other after Defendants' proposed November 2021 cut off. (Ex. 4 (headers).) Discovery in this case is not properly limited to 2021.

Several other points in Defendants' letter require response. First, Defendants claim that they "voluntarily agreed to lift" the Court's bifurcation order (via the parties' October 30 joint letter) only for the limited purpose of taking discovery on Endurance. (ECF No. 55 at 1.) In fact, the parties' October 30 letter asked to extend discovery until April 22, 2024 to allow "sufficient time for the parties to complete discovery regarding *all* issues in this action." (ECF No. 53 at 1 (emphasis added).) The October 30 letter never mentioned Endurance at all.

Also, Defendants fault Nock for the volume of his discovery, but that simply reflects both the difficulty in getting accurate information from Defendants, and an April 22, 2024 discovery deadline which does not reward delay. The Court told Defendants "to go forward with production" on their door to door vendors in July, but **Defendants still have not produced even their Endurance email**. (ECF No. 49-1 at 22:15-17.) Nock's long-held position is that it "makes [] sense to stage production" and "address [discovery] on an individualized basis" (although time has since passed: discovery closes in three months). (Ex. 7.) Nock would prefer to serve less discovery to get the evidence he needs—but without, for instance, diligently serving subpoenas, he would have never detected the post-2021 Endurance emails missing from Defendants' 2023 log. The Court does need to assert control over discovery, but the problem here is Defendants' delay and dissembly—not Nock's efforts to sequence discovery and manage the parties' costs.

Finally, Defendants complain Nock did not disclose the call records at issue while the parties were supposed to be "cooperating [] to determine what occurred," but Defendants put an end to that cooperation when they threatened Nock and his counsel with Rule 11 sanctions. (*Cf.* ECF No. 55 at 2 *with* Ex. 8 at 1.) Defendants also suggest unspecified improprieties by Nock's counsel, claiming they have recently "learned" the call records at issue "were obtained through discovery in another lawsuit." (ECF No. 55 at 2.) Again, this claim is false: none of these call records were obtained via discovery. Nock will respond fully to Defendants' discovery motion if and when they file it. (ECF No. 55 at 1 n.1 ("Defendants anticipate [filing] a motion to compel discovery [] in the near future").) But it is clear the presence of inculpatory evidence in this case is what has triggered Defendants' ire—not whether Nock's discovery responses comply with the Federal Rules, or Nock is meeting and conferring about his responses in good faith.


The Honorable Robert W. Lehrburger
January 17, 2024
Page 4 of 4

                                                Sincerely,

                                                s/Ethan Preston

                                                Ethan Preston

cc: Counsel of record (via ECF)