

**David M. Murdza, Esq.**
**General Counsel**
**3930 Commerce Avenue**
**Willow Grove, Pennsylvania 19090**
**Phone: (267) 942-6000**
**Fax: (267) 281-1206**
**david.murdza@answernet.com**

October 15, 2024

<u>Via Email Only</u>
The Honorable Robert W. Lehrburger
District Court for the Southern District of New York
Room/Chambers 1960
500 Pearl Street
New York, NY 10007
Lehrburger_NYSDChambers@nysd.uscourts.gov

> RE: Nock v. Spring Energy, *et al.*, No. 1:23-CV-01042
> <u>Reply to Plaintiff's Opposition to AnswerNet's Request for Costs</u>

Honorable Judge Lehrburger:

      I respectfully submit this reply letter to address misstatements in Plaintiff's October 7, 2024 Response to AnswerNet's September 25, 2024 fee application. In addition to a number of inaccurate assertions, Plaintiff's response appears to be aimed at further miring AnswerNet in discovery and motion practice in a litigation for which AnswerNet is ***an uninterested non-party, not subject to jurisdiction, regarding issues irrelevant to the underlying TCPA claims of this case, in which AnswerNet is not involved***. To that end, Plaintiff relies upon numerous unpublished opinions without including copies for AnswerNet's consideration, makes unsupported assumptions and accusations about how AnswerNet's third-party verification (TPV) services *should* have be performed and what materials and information it *should* possess, and continuously ignores AnswerNet's repeated notice of its lack of involvement with TPV at relevant times, having acquired TPV, LLC in June 2021, meaning that some of the information or records that Plaintiff argues AnswerNet must produce actually predate AnswerNet's ownership and control of the business.

    I.    *AnswerNet Participated in the Deposition in Good Faith and Applied to the Court for the Reasonable Costs Associated with the Deposition Only*

      AnswerNet's application is appropriate and consistent with the Court's Order which states that following the deposition AnswerNet "may make a request *for reasonable costs associated with the deposition*." (<u>See</u> Doc. 131). AnswerNet has only sought costs directly associated with the deposition, including preparation for and attendance at the deposition, and responding to Plaintiff's post-deposition requests arising from the deposition. (<u>See</u> Doc. 166). Contrary to Plaintiff's misguided assumption in Footnote 4 of his letter, AnswerNet properly excluded the pre-deposition costs it already incurred because those costs were not "associated with the deposition" and therefore are not subject to the Court's consideration, and not because "AnswerNet knows" such costs are indefensible, as Plaintiff now seeks to mislead. (<u>See</u> Doc. 173).

The Honorable Robert W. Lehrburger
October 15, 2024
Re: Reply to Plaintiff's Opposition to AnswerNet's Request for Costs
Page 2

Plaintiff's claims that AnswerNet's expenses are not substantial enough to shift costs or that AnswerNet "did not adequately prepare for—and otherwise obstructed—its deposition" are specious and wholly unsupported by facts. First, AnswerNet has repeatedly articulated to Plaintiff (and subsequently to this Court) its concerns of the substantial expenses incurred since learning of this matter in September 2023. AnswerNet is not the "large conglomeration" portrayed by Plaintiff, but rather a privately-held provider of telephone call center and business process outsourcing (BPO) services with a two-person in-house legal team and a small technology and operations team dedicated to the TPV services. The time these teams spend responding to Plaintiff's many and onerous requests and searching through materials the Parties could otherwise search is time taken away from the teams' core responsibilities, and AnswerNet should not be made to incur those costs.

Plaintiff has offered no facts to support his baseless assertion that AnswerNet obstructed the deposition. AnswerNet witness CEO Gary Pudles, the most knowledgeable AnswerNet employee with respect to its TPV operations, prepared for the deposition, attended as scheduled, and answered Plaintiff's questions based on the knowledge and information possessed by the Company for nearly three hours, until Plaintiff's counsel concluded the deposition after stating on the record that he had no further questions. (See Pudles Deposition Transcript, Doc. 173, Exhibit 13 (hereinafter "Pudles Dep. Tr.") at 117:20-23).

AnswerNet has repeatedly advised Plaintiff that AnswerNet did not operate or control the TPV business at all times relevant to Plaintiff's claims, having acquired TPV, LLC in June 2021 and continuing to service clients since that time pursuant to existing course of business, while migrating operations to AnswerNet's systems. Where AnswerNet is unable to answer a question or provide documents or communications because of lack of actual knowledge predating its acquisition, Plaintiff inaccurately mischaracterizes such responses as "refusals" to answer or demonstrating a lack of preparation. These assertions are false. AnswerNet prepared for and participated in the deposition, and responded to post-deposition discovery inquires, in good faith. Indeed, AnswerNet's single refusal to answer during the deposition was when Mr. Pudles was questioned about *other clients' operations*. AnswerNet did not answer in this instance because AnswerNet is not free to disclose clients' trade secret information, such as discussing clients' proprietary operating processes and how those clients use TPV in those processes, which are completely unrelated to, and not probative of, Defendants operations or the claims in this matter.

## II.     *AnswerNet is a Disinterested Party and Not Directly Involved in this TCPA matter*

Plaintiff falsely states AnswerNet was "directly involved in" alleged TCPA violations and that AnswerNet is responsible with Defendants for "mislabeling verification calls." These claims lack any factual basis, and AnswerNet is certainly a disinterested party. AnswerNet's work for Defendants was limited solely to third-party verification (TPV) of door-to-door sales and not subject to the TCPA. AnswerNet's responsibility was only to verify that a potential customer did indeed seek to purchase the service being sold to them *after the attempted sales transaction concluded.* Accordingly, AnswerNet's work could not be any way related to any alleged TCPA

The Honorable Robert W. Lehrburger
October 15, 2024
Re: Reply to Plaintiff's Opposition to AnswerNet's Request for Costs
Page 3

violations, and if AnswerNet learned through its TPV that sales agent did not meet with the prospective customer as required, AnswerNet appropriately terminated the call and dispositioned it as a no sale.

Plaintiff falsely asserts that AnswerNet is liable for some wrongful or deceptive act with respect to its TPV work and questions the integrity of its work, erroneously stating that "AnswerNet was also jointly responsible with Defendants for mislabeling verification calls in a way that gave Defendants' telemarketers multiple opportunities to coach consumers through the verification calls." The materials already produced in discovery, and Mr. Pudles's testimony demonstrates that AnswerNet did precisely what it was required to do—dispositioned verifications for a door-to-door sales program in a manner that resulted in no sale if AnswerNet learned that would-be customer did not meet in-person with a sales representative. (See Pudles Dep. Tr. 106:3-109:7).

Plaintiff continues his overreaching assault on AnswerNet by asserting that this matter is of public interest because it "implicates . . . the overall integrity of the third-party verification process provided by AnswerNet to Defendants;" however, the TPV process is not at issue in this litigation whatsoever, and the materials provided in discovery and discussed at the deposition clearly demonstrate that AnswerNet properly dispositioned transactions as no sale if there was no in-person meeting. The fact that Plaintiff takes issue with the terminology used in the TPV process does not make AnswerNet "responsible" for any wrong or deceptive act or "directly involved in" any alleged TCPA violations—the fact remains that TPV was properly performed by AnswerNet, and AnswerNet cannot be involved in TCPA violations where a potential customer advised AnswerNet during its TPV that a sales representative did not appear in person, and AnswerNet terminated the call and appropriately dispositioned the transaction to result in no sale.

### III.   Plaintiff's Subpoena Does Not Require AnswerNet to Provide No-Cost Litigation Support Services to Plaintiff

Despite Plaintiff's assertion to the contrary, with respect to querying its system for documents Plaintiff already possesses, AnswerNet has not "refused to load clients.tpvhub.com URLs to evaluate the continued accessibility of its records;" rather, AnswerNet has merely asked to be paid the reasonable sums for its efforts to perform this work. (Pudles Dep. Tr. 73:13-74:24). Similarly, with respect to certain call recordings (including those involving Moshin Jabbar), AnswerNet has made all recordings in its possession available to Defendants for production in this matter. To the extent specific calls recordings exist, Plaintiff can obtain them from Defendants, and AnswerNet should not be compelled to incur the cost of searching through databases of recordings to find certain calls when Plaintiff can do this himself by reviewing the universe of recordings available to him. Plaintiff's continued insistence that a non-party, not subject to jurisdiction, should produce materials he could easily obtain from Defendants is improper and unduly burdensome. Again, AnswerNet is not refusing to provide such litigation support services, only that it not be compelled to do so at its own expense.

The Honorable Robert W. Lehrburger
October 15, 2024
Re: Reply to Plaintiff's Opposition to AnswerNet's Request for Costs
Page 4

### IV. AnswerNet Has Provided Responses and Materials in its Possession and Additional Discovery from AnswerNet is Not Warranted in this Matter

Plaintiff argues more discovery is warranted and inaccurately asserts that AnswerNet has not timely objected to discovery; however, this ignores the fact that AnswerNet objected to Plaintiff's deposition notice, which was subject to briefing and a hearing before the Court, and which resulted in a Court-ordered three-hour deposition *only*. There has been no agreement or order compelling further discovery from AnswerNet, and indeed it was Plaintiff's counsel himself that asserted a deposition was "the most economical way to use Answernet's time," rather than document production; however, Plaintiff's discovery requests have continued, undeterred, even after the deposition was performed. (See Doc 166, Exhibit D).

Moreover, Plaintiff claims that he needs more evidence about AnswerNet's services for Defendants because he takes exception to the terminology used to label the call dispositions; however, this ignores, as previously explained by AnswerNet, that the Company has already provided the materials in its possession responsive to this request. Plaintiff makes the unsupported assertion that a "Customer Needs Clarification" disposition "allowed Defendants' telemarketers multiple tries to coach consumers to lie during AnswerNet's verification calls," but this is simply not the case—the "Customer Needs Clarification" resulted in no sale disposition, as detailed during the deposition. (See Pudles Dep. Tr. 106:3-109:7). How Defendants utilized the dispositions thereafter is part of *their business process, not AnswerNet's*, and not something AnswerNet can further explain. That AnswerNet does not have additional documentation regarding this disposition rule, which AnswerNet believes was established prior to its acquisition in June 2021, is not unreasonable and something that has been repeatedly explained to Plaintiff's counsel, yet he demands AnswerNet produce materials it does not have.

Contrary to Plaintiff's claim, the record does not suggest delay, resistance or deterrence; rather it clearly demonstrates the overzealous pursuit of a non-party by Plaintiff, admittedly before Plaintiff even reviewed Defendants' discovery, in an attempt to have AnswerNet perform costly litigation support efforts on behalf of Plaintiff, at no cost to Plaintiff. Even where AnswerNet has provided the materials it does possess, Plaintiff repeatedly insists there are more or different materials which AnswerNet simply does not have. Indeed, following the deposition AnswerNet provided Plaintiff with the script document in its possession relative to this matter and attempted to identify the "http logs" Plaintiff is seeking, but ultimately determined that these are logs of a third-party database (Amazon Web Server) and not records regularly maintained by the Company, particularly for activity that occurred over three years ago, yet Plaintiff demands more on both requests. (See Doc 166, Exhibit J).

In light of the above facts, Plaintiff cannot claim AnswerNet is not cooperating. Simply put, AnswerNet has provided and/or offered materials responsive to Plaintiff's requests, and appeared for a three-hour deposition as order, yet Plaintiff continues to attempt to coerce AnswerNet to exhaust its limited resources to perform litigation support services for this case at no costs. This is particularly appalling where Plaintiff has demanded production of an uninterested

The Honorable Robert W. Lehrburger
October 15, 2024
Re: Reply to Plaintiff's Opposition to AnswerNet's Request for Costs
Page 5

non-party *before even reviewing* the Parties' discovery, and continues to do so, after stating a deposition would replace the need for further production. For these reasons, AnswerNet seeks an Order for reimbursement of its costs as set forth in its application, and requiring Plaintiff cease demanding further discovery from AnswerNet. Furthermore, AnswerNet to seeks its cost for reviewing, analyzing, and responding to Plaintiff's opposition to its fee application, which required 8 hours of attorney time at a cost of $200 per hour, or $1,600 in total.

Respectfully submitted,

David Murdza, Esq.