**PRESTON/LAW OFFICES**
4054 McKinney Avenue, Suite 310 / Dallas, Texas 75204
(972) 564-8340 / (866) 509-1197 / ep@eplaw.us

**Via ECF**
The Honorable Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse, Room 1960
500 Pearl Street
New York, New York 10007-1312                                                   October 7, 2024

   Re: *Nock v. Spring Energy RRH, LLC*, No. 1:23-cv-01042, pending in the United States District Court for the Southern District of New York

Your Honor,

  This firm (together with Biles Wilson, PLLC) represents Plaintiff Robert Nock ("Plaintiff" or "Nock") in this case. On September 25, 2024, AnswerNet, Inc., TPV, LLC, Sales Verification LLC, and Cerida Investment Corp. (together, "AnswerNet") filed an application to for costs. (*See* ECF No. 166.) This letter responds to AnswerNet's application for costs and motion for protective order.

  **28 U.S.C. § 1821(b) Caps AnswerNet's Deposition Costs:** AnswerNet seeks $3,400 for its time preparing and attending a deposition (ordered by the Court) and an additional $550 for meeting and conferring on Nock's requests for documents after the deposition. (*Cf*. ECF. Nos. 166 at 3, 5, 166-3.) Rule 45 limits the costs for attending a deposition to "the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1). *Cf*. 28 U.S.C. § 1821(b) ("witness shall be paid an attendance fee of $40 per day for each day's attendance"); *Bank Hapoalim, B.M. v. Am. Home Assur. Co.*, No. 92-3561, 1993 WL 452603, *2 (S.D.N.Y. Nov. 1, 1993) (citing, e.g., *Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 675 (S.D. Tex. 1990) ("To pay a witness an amount to cover lost wages would be contrary to § 1821")). Rule 45(d) only discussed attorneys' fees incurred in connection with objections regarding production of documents or as sanctions, neither of which apply here. *Cf*. Fed. R. Civ. P. 45(d). Without waiving any other arguments in this letter, Nock agrees to pay AnswerNet $40 for attending its deposition—but not the hourly rates of AnswerNet's counsel.

  **AnswerNet's Other Claimed Costs Are Not Reimbursable:** The time AnswerNet spent *preparing* for its deposition is not compensable both because the fees incurred are not substantial. *See Wertheim*, 1995 WL 6259, at *7 ("burden of preparing for a single additional deposition is not substantial" enough to shift costs). *See also E3 Biofuels, LLC v. Biothane Corp.*, No. 12-76, 2013 WL 3778804, *16 (S.D. Ohio July 18, 2013) (witness was "not entitled to [] hourly witness fee for the time he will spend preparing for [] his deposition"); *Flagg v. City of Detroit*, No. 05-74253, 2010 WL 3070104, *4 (E.D. Mich. Aug. 4, 2010) (same).

  AnswerNet also should not recover its fees because it did not adequately prepare for— and otherwise obstructed—its deposition, *see infra* at 3-6, in manner indicating that its attorneys' fees were not incurred in "complying" with the subpoena, but instead only incurred for its legal benefit.[2] The time log AnswerNet filed does not contain a complete description, including for

---

2 No mileage is due because AnswerNet's deposition was over Zoom. *Cf*. 28 U.S.C. § 1821(c) *with Beasley v. O'Reilly Auto Parts*, No. 20-00092, 2021 WL 6050451, *1 n.3 (S.D. Ala.

post-deposition time entries. (*See* ECF No. 166-3.) On this record, there is no reason to presume that legible entries would have shown this time was compensable. *See In re Honeywell Int'l, Inc. Secs. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (no costs awarded where witness did not provide "any basis for determining the reasonable costs for compliance with the subpoena"). *See also Contant v. Bank of Am. Corp.*, No. 17-03139, 2020 WL 3260958, *5 (S.D.N.Y. June 17, 2020) (time spent on "attempt to collect" costs and "work done to further and protect [witness's] interests, rather than to comply with Plaintiffs' subpoena" was "not reimbursable"). Even if AnswerNet had shown shifting *some* of its costs was proper, a "requesting party does not necessarily 'bear the entire cost of compliance . . . A non-party can be required to bear some or all of its expenses where the equities of a particular case demand it." *Id.* at *3 (same).

**AnswerNet Did Not Demonstrate Cost-Shifting Is Even Warranted Here:** The "determination of costs on behalf of non-parties is not necessarily automatic, but in fact is subject to a balancing test[.]" *Dow Chem. Co. v. Reinhard*, No. 08-85, 2008 WL 1968302, *1 (S.D.N.Y. Apr. 29, 2008).

> The factors to be considered in determining whether cost-shifting is warranted include (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance.

*Contant*, 2020 WL 3260958, at *3. AnswerNet has not shown it is entitled to the costs it seeks. *See In re Application of Michael Wilson & Partners, Ltd.*, No. 06-02575, 2012 WL 1901217, *4 (D. Colo. May 24, 2012) (non-party "seeking reimbursement [has] burden of establishing [] that [its] expenses should be shifted").

First, AnswerNet "is not a classic disinterested non-party." *In re Honeywell*, 230 F.R.D. at 303 (auditor was not entitled to costs for complying with subpoena in securities lawsuit, citing *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) (auditor "was not the quintessential innocent, disinterested bystander [] because of the role [it] played in [defendant's] collapse")). AnswerNet was directly involved in the TCPA violations at issue: Defendants' telemarketers coached consumers to state that they met with Defendants' representatives in person during subsequent verification calls, and paid AnswerNet to make and record those calls. (*See* ECF No. 55-2 at 2, 4.) AnswerNet was also jointly responsible with Defendants for mislabeling verification calls in a way that **gave Defendants' telemarketers multiple opportunities to coach consumers through the verification calls** (i.e., by lying about meeting in person). (S*ee infra* at 3-4; Pudles Depo. Tr. 66:4-20 (generally, scripts for verification calls "jointly created between the customer and our client solutions team").) Because AnswerNet is not disinterested, the first *Contant* factor does not support shifting costs to Nock. *Cf. In re First Am.*, 184 F.R.D. at 241, 242 (auditor "should have reasonably anticipated being drawn into subsequent litigation resulting from the BCCI fraud" based on "role [it] played in the collapse of BCCI"); *Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.*, No. 91-2287, 1995 WL 6259, *7 (S.D.N.Y. Jan. 9, 1995) (denying cost shifting where witness "was not a mere bystander to the transactions at issue; it provided advice about them for which it received compensation").[3]

---

Mar. 3, 2021) (no "mileage allowance [] due" for "video deposition via Zoom").

[3] *Cf. Dow*, 2008 WL 1968302, at *2 (discounting law firm's costs complying with subpoena where it "should have reasonably anticipated being drawn into subsequent litigation because

Second, AnswerNet "has not presented evidence that it cannot "more readily bear the costs than the requesting party."" *In re Aggrenox*, 2017 WL 4679228, at *11 (citation omitted). There is an obvious financial disparity here: Nock is a single consumer where AnswerNet is a large conglomeration of several third-party verification companies. Indeed, the record suggests AnswerNet used its claims costs as a means to delay, resist, and deter Nock's discovery. Prior to its application, AnswerNet demanded costs for producing some documents which Nock asked to defer.[4] (Preston Decl. ¶¶5-6.) For months, AnswerNet has claimed it could not produce the documents that Nock *did* prioritize—despite his offer to pay AnswerNet's purported costs specific to those documents. (*Id.* ¶¶5-8.) But this was not true: AnswerNet knew its enrollment records have been accessible on URLs on AnswerNet's server at clients.tpvhub.com the entire time. (*Cf.*, *e.g.*, https://clients.tpvhub.com/summary/8f6d14e4-5562-44e7-b807-09207084b8fe (Roland Camunas).) During its deposition, AnswerNet even refused to load clients.tpvhub.com URLs to evaluate the continued accessibility of its records. (Pudles Depo. Tr. 73:13-74:24.) Costs awards under Rule 45 are limited to reimbursement of legal fees that are incurred "in good faith" efforts to *comply* with the subpoena. *In re First Am.*, 184 F.R.D. at 242. *See also Nike, Inc. v. Wu*, No. 13-8012, 2020 WL 257475, *13 (S.D.N.Y. Jan. 17, 2020) (witnesses may not "create obstacles [] and then collect a fee for overcoming them"); *In re Aggrenox*, 2017 WL 4679228, at *10 ("Rule 45 does not cut a blank check to non-parties [and] non-parties 'should not be permitted to run up bills' merely because they expect 'someone else to pay the tab,'"). The second *Contant* factor also weighs against shifting AnswerNet's costs to Nock.

Third, "the litigation is of public importance" because it implicates Defendants' sales practices generally, as well as the overall integrity of the third-party verification process provided by AnswerNet to Defendants, *see infra* at 3-4. The third factor also weighs against shifting AnswerNet's costs to Nock.

**Discovery From AnswerNet Is Still Timely:** AnswerNet seems to object that discovery is closed. (ECF No. 166.) However, certain fact discovery is still open, including the relief Nock seeks here. On September 10, the Court extended the parties' "time to move to compel party and non-party fact discovery [] until October 18, 2024." (ECF No. 155.) AnswerNet complains Nock "could have [] requested" documents earlier—in fact, Nock did, it is just that AnswerNet did not produce them. (*Cf.* ECF No. 166 at 4.) AnswerNet waived its objections to producing the documents sought below. (Preston Decl. ¶4.) Production of the documents identified below (or related relief, including a second deposition at AnswerNet's cost) is warranted.

---

of its role as [] counsel in [aborted] effort" to purchase corporate plaintiff negotiated by "key employees"); *In re Exxon Valdez*, 142 F.R.D. 380, 384 (D.D.C. 1992) (witness's "admission that [portion] of its income comes from the [] defendants [] materially distinguishes API from the pure non-party witness identified in Rule 45") *with Nike, Inc. v. Wu*, No. 13-8012, 2020 WL 257475, *14 (S.D.N.Y. Jan. 17, 2020) (absence of any "allegation that the Banks were involved with, or even aware of, the Judgment Debtors' infringing conduct prior to the litigation" favored shifting costs of subpoena).

[4] These costs do not appear in the instant costs application—likely because AnswerNet knows they were never defensible. (*Cf.* ECF No. 166.)

**Nock Needs More Evidence About AnswerNet's Services for Defendants:** During its deposition, AnswerNet testified how its verifiers marked calls in which the consumer denied meeting with Defendants' sales agents in person as "Customer Needs Clarification," based on a "rule" that Defendants provided. (Pudles Depo. Tr. 102:15-24 ("the rule that the client told us to do when a door-to-door client said that [] the door-to-door person [sales agent] wasn't there"); Preston Decl. ¶12 [describing Exs. 155, 156 to Pudles Depo.].) Unlike several other dispositions that Defendants and AnswerNet used, "Customer Needs Clarification" was not a fraud indicator. (*Id*. ¶13 [describing script produced by AnswerNet].) Hence, this rule allowed **Defendants' telemarketers multiple tries to coach consumers to lie during AnswerNet's verification calls** (about meeting the telemarketer in person). (Pudles Depo. Tr. 100:9-110:8.) The rule is evidence that Defendants had "'knowledge of facts that would have led a reasonable person to investigate'" whether Endurance's sales agents were offshore telemarketers, instead of door-to-door agents traveling to Maryland, but still chose "to remain willfully ignorant." *See Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1076 (9th Cir. 2019) (liability for ratifying TCPA violations).[6]

AnswerNet's deposition notice covered its services with respect to Endurance's enrollments, "negotiations [] about the services AnswerNet provided" during the relevant time period, and "countermeasures [] used to detect and/or prevent fraud." (Preston Decl. ¶4.) But AnswerNet could not to testify how Defendants communicated the "Customer Needs Clarification" rule to it. (Pudles Depo. Tr. 102:25-103:25, 107:15-19.) AnswerNet had to make a "conscientious good-faith endeavor [] to prepare" its witness to "answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997) (cleaned up).
> Rule 30(b)(6) requires the deposition notice to address the deposition topics "with reasonable particularity." Unless the notice is unsatisfactory, the responding party is obliged to prepare the designee "to the extent matters are reasonably available, whether from documents, past employees or other sources."

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-05053, 2021 WL 6064793, *2 (S.D.N.Y. Dec. 22, 2021) (quoting *Bank of New York*, 171 F.R.D. at 151). AnswerNet also testified Defendants had not asked for alerts for verifications calls in which the customer indicated "the sales agent was not physically present with the customer" but had received a call instead. (Pudles Depo. Tr. 63:20-64:9. *But see id*. 114:19-116:21.) While "it is improper to instruct a witness not to answer a question on the basis of relevance," AnswerNet did so in response to a question about whether AnswerNet's *other* clients used such alerts. (*Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 307 (S.D.N.Y. 2019); Pudles Depo. Tr. 64:10-65:14.) The deposition notice covered AnswerNet's services to "other vendors for energy suppliers [] between March 2021 and July 2022." (Preston Decl. ¶4.) Where AnswerNet "did not object" to Nock's notice of deposition, it "cannot at this point argue" that its deponent "could not reasonably have been prepared to answer questions on all of [the] noticed topics." *Tax Refund Litig.*, 2021 WL 6064793, at *2. AnswerNet failed to prepare an adequate

---

[6] *See Henderson*, 918 F.3d at 1073, 1075, 1076 (vicarious liability for "'wink-and-a-nudge' agreement to use unlawful calling practices," despite efforts "'to limit or prevent liability by characterizing their relationship as something other than an agency relationship,'" quoting Restatement (Third) of Agency §§ 1.02 cmt. b, 4.06 cmt. d (2006)).

witness, and it should be required to supply adequate substitute evidence, including by responsive documents and/or another deposition of more knowledgeable employees—at its cost. (*Cf.* Pudles Depo. Tr. 16:22-19:14; Fed. R. Civ. 30(d)(2) (relief for "frustrat[ing]" deposition).)

AnswerNet produced an Excel spreadsheet which indicates the "Customer Needs Clarification" disposition should be used when customers do "not understand" or cannot "complete the verification without questions being addressed." (Preston Decl. ¶13.) AnswerNet claims the Excel file is its only document concerning Defendants' "Customer Needs Clarification" rule, but that is not consistent with the spreadsheet itself—which indicates at least one prior version existed in 2021. (*Id.* ¶14.) Also, spreadsheets do not send themselves, and AnswerNet has not produced any email, etc. showing who sent the spreadsheet (which seems to be an AnswerNet document) or when. On this record, AnswerNet must at least certify its search for such documents "with sufficient specificity to allow the Court to determine whether [it] made a reasonable inquiry and exercised due diligence in a declaration." *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 366-67 (D. Nev. 2019). *See also Red Rock Sourcing LLC v. JGX, LLC*, No. 21-1054, 2021 WL 5567398, *2 (S.D.N.Y. Nov. 29, 2021) (requiring witness provide supplemental affidavit on "process [] to search for [responsive] communications" and other facts).

**AnswerNet's Recordings of Calls with Mohsin Jabbar:** Nock identified (215) 914-9702 as the telephone number used by Mohsin Abdul Jabbar, one of the telemarketers working with Neil St. Louis. (*See* Preston Decl. ¶9 (citing ECF No. 105-1 ¶9).) Nock obtained call records for (215) 914-9702, and identified calls to and from toll-free technical support telephone numbers that AnswerNet provided to sales agents. (*Id.* ¶10; Pudles Depo. Tr. 89:25-90:4 (sales agents called these numbers "and then [AnswerNet] would dial out to the consumer and bring them into a [verification] call [] or something like that throughout the process"). *See id.* 88:13-91:5; Preston Decl. ¶¶9-10 [describing Exs. 46, 154 to Pudles Depo. Tr.].) These recordings are probative because they prove *AnswerNet knew Endurance was involved in telemarketing* . Also, Jabbar attended Defendants' March 26, 2021 training call, so recordings of his pronunciation and accent will help prove Defendants willfully ignored signs of the scheme to disguise offshore telemarketing as "door-to-door" sales. (*Id.* ¶10.) Nock noticed AnswerNet's deposition on:
> verification calls made to Defendants' prospective customers to verify the Sales Agents' enrollments [] and the [] preservation [] of those call records

(Preston Decl. ¶4. *See also id.* ("information provided by the Sales Agents over the telephone, [and] preservation or retention policies applicable to such information").) AnswerNet's witness could not say how long AnswerNet keeps its call recordings. (Pudles Depo. Tr. 90:11-15.) AnswerNet objects to producing these recordings without reimbursement (for non-compensable costs), and claims that these recordings "are available from Defendants"—which Defendants denied. (ECF No. 166 at 4; Preston Decl. ¶11.) AnswerNet's claimed costs do not justify withholding these recordings. (*Id.* ¶8.) If AnswerNet claims it cannot produce these logs, it needs to do so under oath—this record calls for a supplemental deposition at AnswerNet's own cost. *Red Rock Sourcing*, 2021 WL 5567398, at *2, *V5 Techs.*, 332 F.R.D. at 366-67.

**AnswerNet's Server Logs:** During the enrollment process prior to the verification call, Endurance's sales agents exchanged data with AnswerNet's server at https://clients.tpvhub.com. (*See* ECF No. 105-20.) AnswerNet's witness should have been able to testify about the kind of http server used, and the information contained in its logs. Nock's deposition notice covered:

The Honorable Robert W. Lehrburger
October 7, 2024
Page 6 of 7

> TPV, LLC's enrollment system at https://clients.tpvhub.com [] including [] data collected from the Sales Agents via the Internet [and] http server log files [as well as] the networks, servers, and devices used by [AnswerNet] to collect and store any of the foregoing information [and] preservation or retention policies applicable to such information

(Preston Decl. ¶4.) The "user agent string" data found in such logs

> identifies the [] program making a request to a web server[]. The user agent string contains the user application or software, *the operating system* and their versions, web client, web client version, and the engine responsible for the content display.

(Application and Affidavit for Search Warrant, *United States v. Derry, NH, 15 Craven Terrace*, No. 21-00074 (D.N.H. Mar 17, 2021), ECF No. 1 ¶27 & n.10 (italics added).) The clients.tpvhub.com server, the contents and existence of its logs, the IP addresses Endurance's sales agents used to access the server, and whether they used mobile or desktop operating systems to do so, are all obviously relevant to this case. However, AnswerNet refused to identify the server for clients.tpvhub.com "[o]ther than just say cloud-based servers likely in AWS," (i.e., running a virtual operating system in Amazon Web Services). (Pudles Depo. Tr. 75:2-76:6.) AnswerNet's deponent could not say whether its systems collected "user agent" data, and could not even definitively say whether the IP address data in the document given to Nock belongs to (1) the sales agent uploading enrollment data or (2) the putative consumer signing Defendants' contract. (Pudles Depo. Tr. 70:13-73:3; 86:16-87:17.) Nock does not know what "Amazon Web Services reports" AnswerNet references in its application, but if AnswerNet contends it cannot produce the relevant user agent data, it should explain why under oath. (ECF No. 166 at 4. *See Red Rock Sourcing*, 2021 WL 5567398, at *2.) In any event, Nock's subpoena requested documentation for the clients.tpvhub.com server—AnswerNet should produce documentation relevant its server's logs. (Preston Decl. ¶¶4, 15-16.)

**AnswerNet's Communications with Defendants About this Case:** AnswerNet has communicated with Defendants about this case, but could not discuss those communications. (Pudles Depo. Tr. 38.25-41:7.) AnswerNet also objected to questions about these communications based on privilege—but there is no joint defense agreement between AnswerNet and Defendants. (*Id.*) While AnswerNet told the Court that it "*has advised* it does not possess [] responsive" documents, that actually not quite true (or rule out responsive documents in its *control*). (ECF No. 166 at 5 (italics added).) In fact, what AnswerNet told Nock left open the distinct possibility that AnswerNet withheld responsive documents under some objection (including a privilege claim) or failed to locate them during a lackluster search:

> Without waiving any available objections to a formal document request, including but not limited to the objection that this request seeks information or materials protected by the attorney-client privilege and/or work-product doctrine, AnswerNet is not aware of any written communications with Defendants regarding this case.

(Preston Decl. ¶17.) AnswerNet should produce responsive documents and/or provide a declaration for its search, and privilege log for any withheld documents. *Red Rock Sourcing*, 2021 WL 5567398, at *2; *V5 Techs.*, 332 F.R.D. at 366-67.

//

The Honorable Robert W. Lehrburger
October 7, 2024
Page 7 of 7

                Sincerely,

                s/Ethan Preston

                Ethan Preston

cc: Counsel of record (via ECF), AnswerNet, Inc., TPV, LLC, Sales Verification LLC, and Cerida Investment Corp. (via email)