# Exhibit 2
(Nock's Motion for Relief, ECF No. 197)

PRESTON/LAW OFFICES
4054 McKinney Avenue, Suite 310 / Dallas, Texas 75204
(972) 564-8340 / (866) 509-1197 / ep@eplaw.us

**Via ECF**
The Honorable Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse, Room 1960
500 Pearl Street
New York, New York 10007-1312                                November 15, 2024

      Re:    *Nock v. Spring Energy RRH, LLC*, No. 1:23-cv-01042, pending in the United States District Court for the Southern District of New York

Your Honor,

      This firm (together with Biles Wilson, PLLC) represents Plaintiff Robert Nock ("Plaintiff" or "Nock") in this case. Nock asserts Defendants Spring Energy RRH, LLC, RRH Energy Services, LLC, and Richmond Road Holdings, LLC (collectively "Defendants") are liable for calls made during a telemarketing campaign run by Endurance Sales & Marketing LLC ("Endurance"). Class liability in this case turns on a set of call records obtained by Nock's counsel. Nock intends to move to attribute (either by adverse inference or rebuttable presumption) a set of calls in these records to Defendants (specifically, calls to Maryland area codes between March 29 and May 11, 2021—the dates of Endurance's telemarketing campaign).[1] In this letter, Nock moves (1) for relief from the present November 15 deadline with respect to any such motion and (2) to compel production of documents which corroborate the testimony of Gregory Hasiak and support such attribution. (*See* ECF No. 183.)

      As Nock advised when the Court last continued the parties' pretrial deadline, Defendants had previously designated Gregory Hasiak as their Rule 30(b)(6) deponent. (*See* ECF No. 183.) Nock took Hasiak's deposition on October 24, 2024. During his deposition, Hasiak testified that Defendants' management (and specifically Defendants' CEO, Richard Booth) knew of an industry-wide "scheme to disguise telemarketing calls as door-to-door sales" well before hiring Endurance, and that Endurance specifically was rumored to be involved in that scheme when they hired it. (Hasiak Depo. Tr. 46:19-49:18, 50:5-52:9, 71:25-72:20 (hereinafter, "Tr.") ("I'm sure there was at least half a dozen jokes flying around of what to expect from Brian Ream or any of the sales channels that we were onboarding").)[2]

      **Relief From the November 15 Deadline:** Circumstantial evidence assembled in this case corroborates Hasiak's testimony and proves that Defendants knowingly sanctioned Endurance's telemarketing, and the efforts to disguise telemarketing as "door-to-door" sales.

---

[1]    The call records themselves lend statistical support to the conclusion that Defendants' Endurance campaign was the stimulus for these calls. By counsel's count (and accounting for a six-hour shift of UTC time), Endurance's sales agents made an average of over 400 calls per day to Maryland area codes between March 29 to May 11, 2021. However, there are less than 20 calls to Maryland area codes on dates immediately before and after Endurance's campaign for Defendants (March 23 to 28 and May 12 to 16, 2021).

[2]    Hasiak also testified certain of MBM's agents admitted to obtaining sales "from a call center somewhere in Asia [] pretending to be door-to-door agents," but that Booth directed Hasiak to permit these agents to continue selling. (Tr. 40:14-43:25.)

Together, the record warrants attribution of the specific calls identified above to Defendants.[3] In an abundance of caution, Nock seeks relief from the November 15 deadline to the extent it would apply to a motion for such an adverse inference or rebuttable presumption. Nock can summarize the relevant parts of Hasiak's deposition here, but cannot provide a full account of this circumstantial evidence in three pages. It is more practical and efficient for Nock to wait for Defendants' imminent motion for summary judgment and consolidate such motion with his opposition, where he can present a complete record of the circumstantial evidence of Defendants' state of mind. (In the alternative, Nock requests the Court set a schedule for briefing on a separate motion, using the page limits consistent from paragraph III.E of Your Honor's Individual Practices.)

**TPV.com Distance Reports:** Hasiak testified that Defendants received automated alerts whenever GPS data for door-to-door sales reflected abnormal distances, and Defendants received such alerts for distances over 2,000 miles "on a monthly basis." (Tr. 136:9-138:7.) Defendants refuse to provide the TPV.com distance reports over 2,000 miles referenced by Hasiak, on the basis that such discovery is "barred by the Court's June 18, 2024 Order." (Ex. 1 at 2.)

This misstates the record. Nock's June 10 motion to continue sought discovery on "all ostensible 'door-to-door' vendors where Defendants' GPS data reflects a distance of more than *1,000* miles[.]" (ECF No. 95 at 2 (italics added).) The Court's June 18 order never specifically resolved this request (but instead closed document discovery "subject to resolution of any pending disputes relating to [document] discovery"). (ECF No. 102.) The instant motion is narrower than Nock's June 10 motion—he seeks only one specific type of document (TPV.com data for enrollments) reflecting a larger distance (over *2,000* miles). (ECF No. 97.) This TPV.com data falls within the document requests Nock previously served on Defendants, and which are the subject of pending disputes (including the June 10 motion itself).[4] The parties have

---

[3]   Because they were using telemarketers, Defendants should have ensured they could produce a "record of each telemarketing call" for five years. 16 C.F.R. § 310.5(a)(2), (e). Defendants knew they were involved in a scheme to disguise telemarketing which allowed them to circumvent this requirement, and they cannot be allowed to benefit from such scheme. *Cf. Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988) (courts may apply adverse inference where a "policy is instituted in order to limit damaging evidence available to potential plaintiffs"); *Appleton Elec. Co. v. Advance-United Expressways*, 494 F.2d 126, 135 (7th Cir. 1974) ("Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify" by failing to preserve records); *Plaintiffs #1-21 v. Cnty. of Suffolk*, No. 15-2431, 2021 WL 11629176, *6 (E.D.N.Y. Aug. 5, 2021) (rebuttable presumption supporting class certification, "history of failing to collect adequate [] data should not serve as a shield against potential liability for the misdeeds"); *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 223 (S.D.N.Y. 2013) (adverse inference applied to documents defendants failed to produce in discovery based on "events the Court has found (1) were tainted by fraud, or (2) as to which there is probable cause to suspect fraud").

[4]   (*Cf.* Ex. 2 at 12-14 (requests 8 ("documents concerning enrollments that were rejected by Defendants during the class period"); 9 ("with respect to consumers whose enrollment(s) Defendants initially rejected but later approved during the class period, all documents

met and conferred, and this dispute was pending before the Court's June 18, 2024 order. Nock needs this data to corroborate Hasiak's testimony, and defend it from Defendants' allegations that Hasiak's testimony is materially false.

**TIPS Complaints:** Hasiak testified that, while he prepared to give Defendants' Rule 30(b)(6) deposition, Booth "wanted [him] to attest to something that wasn't true," specifically that TIPS had obtained valid consent to call the customers it enrolled for Defendants, and "that to collect [the doctored] recordings [of consent collected by TIPS] would be too difficult as they are in different databases." (Tr. 14:5-16:7; 23:24-24:23.)[5] Hasiak also testified that Defendants received complaints about TIPS's telemarketing. (Tr. 29:12-30:5, 124:17-23.) Defendants have refused to produce those complaints because they were "not stored in a centralized location and would require Defendants to perform an account-by-account search." (Ex. 1 at 2.) But this is obviously the *exact same justification* that Booth pressured Hasiak to provide as an excuse why Defendants would not produce TIPS consent records. (Tr. 23:24-24:23.) After his deposition, of course, the cat is out of the bag and Defendants have agreed to produce those recordings. But TIPS doctored the *recordings* precisely in order to provide Defendants with a defense. Defendants are still using the same gambit to prevent discovery of TIPS *complaints*, which undercuts their defense. Again, corroborating Hasiak's testimony is proper discovery.[6]

---

concerning both the initial attempted enrollment(s) and the subsequent, successful enrollment"); Ex. 3 at, e.g., 5, 10, 12 (requests, e.g., 72 ("all documents concerning GPS tracking in Defendants' quality assurance program"); 76 (communications with TPV.com); 77 (faked GPS enrollment data).) Defendants objected "there is no basis for any discovery regarding calls made by any vendors other than Endurance" with respect to requests 8 and 9. (Ex. 2 at 12-14.) Nock sent meet and confer correspondence on requests 8 and 9 on July 27, 2023. The objections to requests 72, 76, and 77 are all covered by Nocks' June 10 motion to extend the scope of discovery. (Ex. 3 at 5-6, 10-13.)

[5] TIPS claimed to have a cross-selling arrangement with AT&T, in which they supposedly obtained consent to call customers for Defendants during incoming AT&T customer service calls. (Tr. 14:5:15:9.) AT&T has confirmed it never had any relationship with TIPS. (AT&T Decl. ¶8.)

TIPS initially provided Defendants ostensible recordings of this consent that "have been tampered with or [] cut here and there," but TIPS eventually stopped providing them because "it takes quite a bit of time to [] to edit these phone calls," so it was "not impossible to understand why TIPS would say this was difficult [] to provide consent for every phone call." (*Id*. 36:8-21. *See id*. 22:17-23:6.) Hasiak testified Defendants knew this cross-selling arrangement was fictitious "almost from very beginning of the contract." (*Id*. 18:7-11.) In contrast, Defendants' deponent testified Greg would have know if Defendants ever confirmed TIPS' relationship with AT&T or if they fired TIPS because it was not producing consent records ("Greg was dealing with them"). (Def.s' Depo. Tr. 18:4-19:11, 233:13-18.) They should have been able to do so: the Rule 30(b)(6) deposition notice specifically included "any investigation Defendants had taken to ensure that [TIPS] had valid consent and/or opt-in to make telemarketing calls to prospective customers[.]" (Ex. 187 to Def.s' Depo. Tr. at 4.)

[6] TIPS complaints are covered by the Court's February 6, 2024 order. (ECF No. 67 (ordering "discovery [on] the vendor that communicated with Roland Camunas").)

The Honorable Robert W. Lehrburger
November 15, 2024
Page 4 of 4

                          Sincerely,

                          s/Ethan Preston

                          Ethan Preston

cc: Counsel of record (via ECF)