UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ROBERT NOCK, an individual, on his own
behalf and on behalf of all others similarly
situated,

               Plaintiff,

        v.

SPRING ENERGY RRH, LLC d/b/a SPRING
POWER & GAS, RRH ENERGY SERVICES,
LLC and RICHMOND ROAD HOLDINGS,
LLC, Delaware limited liability companies,

             Defendants,

        v.

ENDURANCE SALES & MARKETING, LLC,

           Third-Party Defendant.

------------------------------------------------------------X

**23-CV-1042 (LTS) (RWL)**

**DECISION AND ORDER:
<u>MOTION TO TRANSFER</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

    Plaintiff Robert Nock filed this case against Defendants as a putative class action,

alleging receipt of unsolicited telemarketing calls in violation of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and corresponding Maryland law.  After

more than two years of litigation, and with Defendants' summary judgment motion fully

briefed and pending, Nock has filed a motion to transfer the case to the District of

Maryland so that it can be consolidated with two other putative class actions – one filed

by Nock a year ago, and the other filed recently by Nock's attorneys.  For the following

reasons, the motion is GRANTED.[1]

---

[1] The case has been referred to the undersigned for general pretrial purposes.  (Dkt. 47.)
Consistent with the majority of cases in this Circuit, the Court deems the motion to transfer
as non-dispositive, such that it may be determined directly by the undersigned.  *See Fritz*

## Background

### A.    The Instant Action

Defendant Spring Energy RRH, LLC ("Spring") provides energy services and products in New Jersey, Pennsylvania, and Maryland.  (Nock 56.1 ¶ 1.[2])  Nock, a Maryland resident, commenced this action on February 8, 2023, claiming that Spring made unsolicited phone calls offering its energy products and services.  (Dkt. 1.)  The complaint also names two Spring affiliates, RRH Energy Services, LLC ("RRH"), and Richmond Road Holdings, LLC ("Richmond") (collectively with Spring, "Defendants" or the "Spring Defendants").  Nock seeks certification of three classes extending to all similarly situated people in the United States, and three subclasses limited to the state of Maryland.  (Dkt. 18 ¶ 37.[3])

Discovery closed on November 15, 2024, except for motions to compel outstanding discovery.  (*See* Dkt. 183.)  Discovery revealed that the telemarketing calls in question were made by the last link in a chain of third-party subcontractors.  Spring contracted with Third-Party Defendant Endurance Sales & Marketing, LLC ("Endurance")

---

*v. Realpage, Inc.*, No. 20-CV-7055, 2021 WL 3700434, at *1 (W.D.N.Y. Aug. 21, 2024) ("Most recent district court opinions in the Second Circuit conclude that motions for a change of venue are non-dispositive and therefore 'within the pretrial reference authority of magistrate judges'") (collecting cases and quoting *Skolnick v. Wainer*, No. 13-CV-4694, 2013 WL 5329112, at *1 n.1 (E.D.N.Y. Sept. 20, 2013)); *United States ex rel. Fisher v. Bank of America*, 204 F. Supp.3d 618, 620 n.1 (S.D.N.Y. 2016) ("Because a motion to transfer venue is non-dispositive, this Court … will adjudicate it by order pursuant to 28 U.S.C. § 636(b)(l)(A)").

[2] "Nock 56.1" refers to Plaintiff's Rule 56.1 Statement of Material Facts filed in opposition to Defendants' motion for summary judgment, located at Dkt. 233-1.  The portions of Nock 56.1 to which the Court cites are Nock's responses to Defendants' 56.1 Statement of Undisputed Material Facts, located at Dkt. 222-1.

[3] Dkt. 18 is the Amended Complaint, which is the currently operative pleading.

to provide door-to-door, residential-customer marketing services of certain listed utilities in Pennsylvania, Maryland, and New Jersey.[4]  (Nock 56.1 ¶¶ 10, 13-16.)  Endurance subcontracted with Lonestar Marketing Group ("Lonestar") to locate and engage the individual sales agents used for Spring's marketing.  (*Id.* ¶ 23.)  Lonestar contracted with Neil St. Louis as one of several sales agents.  (*Id.* ¶ 25.)  St. Louis then engaged the services of a Pakistani call center that made telemarketing calls (the "Pakistani Call Center").  (*Id.* ¶¶ 46-47.)  The parties dispute whether and to what extent Defendants knew or expected that Endurance would use subcontractors who procured telemarketing calls.  (*See, e.g.*, *id.* ¶¶ 50-52.)  It is undisputed, however, that the Endurance marketing campaign for Spring began on March 29, 2021, and ended on May 11, 2021.  (*Id.* ¶¶ 34-35, 54-55, 88.)

On February 5, 2025, Defendants moved for summary judgment.  (Dkt. 219.)  The two points advanced in the motion are, first, that no evidence shows that Spring violated the TCPA either directly or vicariously; and, second, RRH and Richmond cannot be liable because they had no involvement in the alleged violations, and there is no evidence to support piercing the corporate veil as between Spring on one hand and RRH or Richmond on the other. (*See* Dkt. 222.)  Nock has opposed the motion but also moved for a continuance so that he can obtain additional discovery.  (*See* Dkt. 234.)  In the midst of summary judgment briefing, on April 28, 2025, the case was reassigned from District Judge Rearden to Chief District Judge Swain.  Defendants' summary judgment motion was fully briefed as of May 7, 2025.  (*See* Dkt. 248.)

---

[4] Endurance filed an Answer. (Dkt. 124.)  Its attorneys, however, withdrew as counsel in September 2024, and Endurance did not appear any time thereafter despite being warned that a corporate entity must appear through counsel.  (*See* Dkt. 162.)  Accordingly, Endurance is in default.

Two days later, on May 9, 2025, Nock filed the instant motion to transfer the case to the District of Maryland so that it can be consolidated with two other cases that Nock's attorneys filed, approximately one year and two years, respectively, after they filed the instant action in the Southern District of New York.  (Dkt. 250.)

**B.    The Two Maryland Actions**

About a year after commencing the instant action, on March 5, 2024, Nock filed a second putative TCPA class action against a different set of defendants involved in a marketing campaign for a different energy company – Indra Energy (the "*Nock-Indra*" action).  Complaint, *Nock v. Palmco Administration, LLC*, No. 24-CV-662 (D. Md. March 5, 2024) (the first amended complaint from *Nock-Indra* appears in the instant action at Dkt. 250-1).  Both Neil St. Louis and the Pakistani Call Center were involved in the Indra campaign.  (*See* Nock 56.1 ¶ 88.)  Discovery is continuing, and Indra plans to file for summary judgment.  (*See Nock-Indra*, Dkt. 116 at 4.)  However, the Maryland District Court has deferred setting a further case schedule until at least two issues are preliminarily addressed:  (i) whether the Maryland District Court should consolidate the *Nock-Indra* Action with the *Savada* Action described next, and (ii) the instant motion to transfer.  (*Id.*, Dkt. 93.)

A year and a month after filing the *Nock-Indra* Action, on April 7, 2025, Nock's attorneys filed another putative class action in the District of Maryland in the name of plaintiff Elias Savada against the Defendants in this case (Spring, RRH, and Richmond), an additional affiliate of Defendants, individual Richmond shareholders, and the same Indra Defendants sued by Nock in his Maryland case (the "*Savada*" action).  Complaint, *Savada v. RRH Energy Services, LLC*, No. 25-CV-1156 (D. Md. Apr. 7, 2025), Dkt. 1 (filed in the instant action at Dkt. 250-2.)  Although the *Savada* Action names as defendants

both the Spring Defendants and the Indra Defendants, it asserts that the claims "concern two different telemarketing campaigns for two different groups of Defendants." (Dkt. 250-2 ¶ 4.) That is because the Spring campaign ran from March 29 to May 11, 2021, while the Indra campaign ran from May 17 to June 9, 2021. (*Id.*) In other words, "[Spring] and Indra's telemarketing campaigns were separated by several days, and did not overlap." (*Id.* ¶ 6; *see also* Nock 56.1 ¶ 88 (asserting there is "a clear break between th[e] two campaigns").)

Nock and Savada's attorneys expressly acknowledge bringing the *Savada* Action in response to the summary judgment motion the Spring Defendants filed in the instant case. (*See* Dkt. 250-2 ¶¶ 5-7.) Defendants' summary judgment brief asserts that "[d]uring th[e] same period" Nock purports to have received telemarking calls concerning Spring, he also allegedly received calls on behalf of Indra. (Dkt. 222 at 10; *see also* Nock 56.1 ¶ 88.) Seizing upon that assertion, Nock's attorneys in both the Savada Action and on the instant motion, express concern that Spring will advance an "empty chair defense" suggesting that any calls received by Nock were made on behalf of Indra, not Spring. (Dkt. 250-2 ¶ 5.) To avoid such a defense, Savada brought his action against both the Spring Defendants and Indra Defendants. (*Id.* ¶ 7.)

Savada has moved to consolidate his action with the *Nock-Indra* Action in the Maryland District Court. (*Savada*, Dkt. 31.) Indra has moved to dismiss or stay the *Savada* Action based on the first-to-file rule. (*Id.*, Dkt. 45.) Those motions remain pending.

## C.    The Instant Motion

Nock styled the instant motion as a motion "to consolidate cases." (Dkt. 250.) His brief acknowledges, however, that before the cases can be consolidated, the case first

must be transferred to the District of Maryland pursuant to 28 U.S.C. § 1404(a). (*Id.* at 4.) Nock argues that transfer and consolidation are warranted due to changed circumstances, principally including the filing of the two Maryland cases; the Spring Defendants' suggestion in their summary judgment motion that at trial they may try to attribute Spring-related calls to Indra; and deposition testimony of a former Spring officer raising the prospect that Spring will not be able to fund a judgment against it. As a result of those changes, Nock argues, Maryland is a more convenient forum that will provide the class with the best chance of recovery, and will avoid the prospect of inconsistent rulings.

In opposition, the Spring Defendants argue that Nock's attorneys filed the *Savada* Action as a tactical gambit to forestall a ruling on Defendants' pending summary judgment motion and to obtain additional discovery to fend off summary judgment that Nock did not obtain here. Defendants further argue that the Southern District of New York remains a more convenient forum and that they will be prejudiced by transfer and consolidation, particularly because the two Maryland actions and the instant action are at much different procedural postures.[5]

### Legal Standards

This Court cannot rule upon Nock's request to consolidate the instant case with either of the cases pending in the District of Maryland. If this Court were to transfer the case, consolidation would be a question for the Maryland court, which already has sub judice Nock and Savada's motions to consolidate the two Maryland actions. Accordingly,

---

[5] On May 23, 2025, the Indra Defendants filed a letter in opposition to Nock's motion to transfer. Nock disputes their standing to do so. (Dkt. 263 at 9.) The Court has reviewed the letter, and, even if the Court were to consider Indra's arguments, the Court's decision would remain the same.

the Court will decide only whether or not to grant Nock's request to transfer and will do so using the legal framework for determining motions to transfer. The Court recognizes, however, that the factors considered under either framework overlap to some extent and that the Court should take into account the prospect of consolidation.

By statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer." *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988). "The statute has a broad purpose: to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Schoenefeld v. New York*, No. 08-CV-3269, 2009 WL 1069159, at *2 (S.D.N.Y. Apr. 16, 2009) (internal quotation marks omitted) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964)).

"In deciding whether to transfer a case from one judicial district to another, a court first examines whether the case could have been brought in the other district." *Pence v. Gee Group, Inc.*, 236 F. Supp.3d 843, 849 (S.D.N.Y. 2017). If the case could have been brought in the proposed transferee district, a court must then examine several factors, commonly referred to as "private" and "public-interest" factors. *Id.* at 850. Transfer may be appropriate where the moving party shows by "clear and convincing" evidence that the balance of convenience favors transfer. *New York Marine & General Insurance Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010). When deciding whether transfer is appropriate, courts consider the following factors:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative means of the parties; (4) the locus of the operative events; (5) the relative ease of access to sources of proof; (6) the weight accorded to plaintiff's choice of forum; (7) the availability of process to compel unwilling witnesses; (8) the forum's familiarity with the governing law; and (9) trial efficacy and the interests of justice based upon the totality of the circumstances.

*Schoenefeld*, 2009 WL 1069159, at *2 (collecting cases); *accord Guardian Life Insurance Co. of America v. Coe*, 724 F. Supp.3d 206, 213 (S.D.N.Y. 2024).  "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp.2d 549, 561 (S.D.N.Y. 2000) (citation omitted) (quoting *First City National Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).

## Discussion

The parties do not dispute that Nock could have brought this case in the District of Maryland.  But unlike in most cases, Nock, as plaintiff, seeks transfer long after he chose to file in this District.  Even so, the Court concludes that Nock has met his burden to demonstrate that the case should be transferred.   In evaluating the relevant factors, the Court first addresses Nock's choice of forum and his argument that circumstances have changed.  The Court then examines the interests of justice, followed by discussion of the additional factors.

## A.    Plaintiff's Choice Of Forum And Changed Circumstances

"While … unusual, a plaintiff is not barred from seeking transfer even though he had the original choice of forum."  *Trehern v. OMI Corp.*, No. 98-CV-242, 1999 WL 47303, at *2 (S.D.N.Y. Feb. 1, 1999); *see also Atlantic Mutual Insurance Co. v. CSX*

*EXPEDITION*, No. 00-CV-7668, 2003 WL 21756414, at *2 (S.D.N.Y. July 30, 2003) (a plaintiff's motion to transfer under § 1404(a) is "unusual, but not unique"); *Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F. Supp. 1114, 1118 (S.D.N.Y.1969) ("While unusual, it is not unknown for a plaintiff to seek relief under Section 1404(a)").  In the typical transfer case, where the defendant seeks transfer, the plaintiff's initial choice of forum is given "substantial weight."  *Royal & Sun Alliance Insurance, PLC v. Nippon Express USA, Inc.*, 202 F. Supp.3d 399, 405 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp.2d 690, 695 (S.D.N.Y. 2009)).  That is not so, however, in a case like this one where the plaintiff seeks to transfer the case away from the forum they originally chose.

"[B]ecause a plaintiff has already had the opportunity to choose the forum when filing the action, courts in this District have historically required plaintiffs to demonstrate a change in circumstances that has taken place since the filing of suit in order to prevail." *Fisher*, 204 F. Supp.3d at 623 (internal quotation marks and brackets omitted) (quoting *Atlantic Mutual Insurance*, 2003 WL 21756414, at *2); *see also Ferrostaal, Inc. v. Union Pacific Railroad Co.*, 109 F. Supp.2d 146, 151 (S.D.N.Y. 2000) (stating that a plaintiff moving to transfer venue "must demonstrate, inter alia, that after the action was filed there was a change of circumstances that warrants transferring the action to the transferee forum"  because the plaintiff "has already had an opportunity to choose the venue when filing the action"); *Trehern*, 1999 WL 47303, at *3 (describing showing of change in circumstances as "[t]he threshold question when deciding a § 1404(a) motion by a plaintiff").  "Accordingly, 'plaintiffs face a heavier burden than defendants' in moving for transfer," and "[t]he 'usual presumptions as to a plaintiff[']s choice of forum are not appropriate' in this posture.'"  *Fisher*, 204 F. Supp.3d at 623 (first quoting *Washington*

*National Life Insurance Co. of New York v. Morgan Stanley & Co.*, 974 F. Supp. 214, 224 (S.D.N.Y. 1997); then quoting *Trehern*, 1999 WL 47303, at \*2).

To the Court's knowledge, no court has delimited what can or cannot qualify as changed circumstances warranting transfer. Circumstances are varied, and examples that have supported transfer include a state court ruling making a defendant amenable to suit in the transferee district, *Harry Rich Corp.*, 308 F. Supp. at 1118-19; a plaintiff's addition of a defendant who is more amenable to suit in the transferee district, *Cremin v. Canadian National Railway Co.*, No. 84-CV-8770, 1986 WL 4065, at \*4 (S.D.N.Y. Apr. 3, 1986); and the later filing of a like class action by a different plaintiff, *Connors v. Lexington Insurance Co.*, 666 F. Supp. 434, 455 (E.D.N.Y. 1987). The filing of another lawsuit after commencement of the action – even when filed by the plaintiff – may qualify as a changed circumstance supporting transfer. *See, e.g.*, *National Experiential, LLC v. Nike, Inc.*, No. 20-CV-3197, 2021 WL 9678642, at \*8 (E.D.N.Y. July 31, 2021) (transferring breach of contract case to Illinois where plaintiff filed a later case involving the same contract but a different defendant); *Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 (E.D.N.Y. 1986) (transferring patent infringement case filed in the Eastern District of New York to the Southern District of New York so that the case could be consolidated with plaintiff's later-filed action asserting the same patent against a different defendant); *see also Jibowu v. Target Corp.*, No. 17-CV-3875, 2024 WL 4753294, at \*4 (E.D.N.Y. Nov. 12, 2024) (transferring class action to District of Minnesota where plaintiffs' lawyers did not file but took over later-filed Minnesota class action against same defendant).

Notwithstanding the "long history in this district of requiring a plaintiff to demonstrate a change in circumstances" to warrant transfer, "the Second Circuit has not yet ruled on this … test." *Atlantic Mutual Insurance*, 2003 WL 21756414, at \*2 (internal

quotation marks and citations omitted). It has, however, "granted a plaintiff's motion to transfer without mention of any such requirement." *Fisher*, 204 F. Supp.3d at 624 (citing *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978)). In *Corke*, the district court dismissed the case for lack of personal jurisdiction but did not consider plaintiff's motion to transfer to a district where personal jurisdiction would lie. 572 F.2d at 78. On appeal, the Second Circuit found that the district court should have considered the transfer motion and that transfer was "in the interest of justice" because "refusal to transfer would severely prejudice" the plaintiff. *Id.* at 80 (internal quotation marks and citation omitted). Specifically, without transfer to the transferee district – where personal jurisdiction was more likely to lie – the plaintiff would have been barred from filing a new action in the transferee district by the applicable statute of limitations. *Id.* At the same time, the Court found that transfer would not prejudice the defendants. *Id.* at 80-81.

Consistent with that approach, "several courts in this District consequently have found that 'a showing of changed circumstances is not required if transfer is in the interests of justice.'" *Fisher*, 204 F. Supp.3d at 624 (internal quotation marks omitted) (quoting *Posven, C.A. v. Liberty Mutual Insurance Co.*, 303 F. Supp.2d 391, 407 (S.D.N.Y. 2004) (collecting cases)). "Courts taking this approach generally have applied it to facts analogous to those in *Corke* or where there would be other severe prejudice to a plaintiff." *Id.* (citing *Posven*, 303 F. Supp.2d at 407 (granting plaintiff's motion to transfer to allow related claims to remain together where one defendant in the case otherwise would be dismissed on personal jurisdiction grounds)); *Atlantic Mutual Insurance*, 2003 WL 21756414, at *3 (analyzing motion to transfer under both the change-of-circumstances test and whether the action "is barred by any applicable statute of limitations that would result in severe *Corke*-like prejudice"); *Crane v. Metro-North*

11

*Commuter Railroad*, No. 87-CV-2876, 1989 WL 74954, at *3 (S.D.N.Y. June 26, 1989) (explaining that the change-of-circumstances "rule is not without its exceptions" such as where "denial of the transfer motion would have resulted in severe prejudice to the plaintiff"); *Gipromer v. SS Tempo*, 487 F. Supp. 631, 633 (S.D.N.Y. 1980) (finding grant of plaintiff's motion to transfer would serve the interests of justice because dismissal would subject plaintiff to a statute-of-limitations bar in transferee district).

To be clear, changed circumstances and interests of justice go hand-in-hand with each other; that is, changed circumstances may warrant transfer in the interests of justice. In a sense, changed circumstances simply inform the broader consideration of whether the interests of justice warrant transfer. *See Hobby Lobby Stores Inc. v. Obbink*, No. 21-CV-3113, 2023 WL 6214240, at *4 (E.D.N.Y. Sept. 23, 2023) ("This Court finds that the interests of justice inquiry adequately subsumes consideration of any change in circumstances"); *National Experiential*, 2021 WL 9678642, at *4 ("the weight of authority favors the view that even though a bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry"). The Court nonetheless finds it useful to first address Nock's changed-circumstances argument and then a broader inquiry into the interests of justice.

### 1.    Nock Identifies Three Change Circumstances

Nock identifies three developments as changed circumstances that justify revisiting venue: (1) the filing of *Nock-Indra* and *Savada* in the District of Maryland; (2) Defendants' motion for summary judgment in this action; and (3) the prospect of Spring filing for bankruptcy. The Court addresses each in turn.

Nock made a strategic choice to file two separate actions against two different sets of defendants. He chose to file the instant case in the Southern District of New York, and,

a year later, he chose to file his case against the Indra Defendants in the District of Maryland.  If there were a basis to keep the cases together, Nock could and should have done so at that time.  But he did not, recognizing that Defendants and the Indra Defendants are entirely distinct from each other and that the timeframes of the challenged marketing campaigns in each case were separated in time.  Indeed, in opposing summary judgment, Nock cites the Pakistani Call Center's call records as demonstrating "a clear break between those two campaigns."  (Nock 56.1 ¶ 88.)

Nock's attorneys made a similar strategic choice when they decided to file the *Savada* Action.  The claims in *Savada* are essentially the same claims that Nock advances in his two separate cases, and to a large extent *Savada* therefore is duplicative of the two actions filed by Nock.  Indeed, as defined, Nock's putative classes in both cases include Savada, who alleges he received calls on behalf of both Spring and Indra. Further, Nock knew no later than June 10, 2024 (when he filed the amended complaint in his separate action against Indra), that the Spring and Indra campaigns, despite being separated in time, had in common the involvement of St. Louis and procurement of the Pakistani Call Center.  Yet, Nock waited almost a year before seeking transfer and consolidation.  *See Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392, 395 (2d Cir. 1992) (affirming denial of transfer where plaintiff had ample time to bring the action within the limitations period and belatedly sought transfer to avoid a statute of limitations defect); *Ferrostaal, Inc. v. M/V EAGLE*, No. 02-CV-1887, 2003 WL 21496689, at *2 (S.D.N.Y. June 30, 2003) (finding insufficient change in circumstances and denying transfer where potential relevance of new information was known or should have been known to plaintiff long before lawsuit was filed); *Atlantic Mutual Insurance*, 2003 WL 21756414, at *3 (denying transfer and rejecting plaintiff's claim of "recently discovered evidence" of

defendant's personal jurisdiction in the transferee district when plaintiff "was well aware" of that evidence long before bringing the motion to transfer) (internal quotation marks omitted).

Looking for a more recent changed circumstance, Nock seizes upon Defendants' recent summary judgment motion in the instant case.  (*See* Dkts. 250 at 7 (stating that "[Defendants'] recent motion for summary judgment prompted this motion"), 250-2 ¶ 5.) Specifically, Nock points to a statement in Defendants' summary judgment brief asserting that Nock allegedly received calls on behalf of Indra "during the same period" as the Spring campaign.  (Dkt. 250 at 2 & n.8 (citing Dkt. 222 at 10).)  Nock argues that Defendants' suggestion of overlap in the two campaigns raises the prospect that Spring and Indra could "blame each other at trial" for their respective campaigns, and, that transfer and consolidation with the Maryland cases will avoid either set of Defendants from pointing the finger to an empty chair.  As Nock puts it, transfer and consolidation will ensure the availability of an "alternative liability" theory, shifting the burden of proof to the defendants to demonstrate the calls received were not made on their behalf.[6]  (Dkts. 250 at 3, 263 at 3, 7.)

Just how vulnerable Nock would be to an empty-chair defense is questionable.  In their Rule 56.1 Statement, Defendants' factual assertion of overlapping campaigns is not

---

[6] "Under alternative liability, the burden of proof is shifted to the defendants because of the injustice of permitting proved wrongdoers, who among them have inflicted an injury upon the entirely innocent plaintiff, to escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused the harm."  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 447 F. Supp.2d 289, 298 n.33 (S.D.N.Y. 2006) (internal quotation marks and citation omitted); *see also* Restatement (Second) of Torts § 433B(3) (1965) ("Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one  has caused it, the burden is upon each such actor to prove that he has not caused the harm").

so daunting as Nock makes it seem.  First, Defendants agree that the Spring campaign, which began March 29, 2021, ended May 11, 2021.  (Spring 56.1 ¶¶ 54-55.)  Second, Nock alleges, and Defendants do not appear to have provided any contrary proof, that he did not receive a call from Indra until May 18, 2021, a week after the Spring campaign ended.  (*See* Dkts. 250 at 2, 250-1 ¶¶ 56-57, 62.)  Third, the last paragraph of Spring's 56.1 states that "During this same period – ***May and June 2021***, [Nock] also allegedly received telemarketing calls … on behalf of Indra Energy, which is unaffiliated with Defendants."  (Spring 56.1 ¶ 88 (emphasis added).)  "During May and June 2021" is entirely consistent with there being "a clear break" between the Spring campaign (ending May 11, 2021) and any Indra campaign call received by Nock (beginning May 18, 2021).  And, as noted above, Nock presents what appears to be incontrovertible proof that the Indra campaign did not overlap with the Spring campaign, other than by possibly one day.  (*See* Nock 56.1 ¶ 88 (stating that St. Louis's telemarketers could not have enrolled customers for Indra before May 10, 2021).)  In short, Nock's plaint that circumstances have changed dramatically based on Defendants' summary judgment brief appears overblown.

However, as Nock aptly observes, Defendants' opposition to transfer does not walk back their "during the same period" statement.  Rather than agreeing that the two campaigns did not overlap, or disavowing the empty-chair argument,[7] Defendants have

---

[7] Instead of disavowing their empty-chair argument in opposing Nock's motion to transfer, Defendants argue that Nock should have anticipated the defense before Defendants moved for summary judgment.  They contend that they "showcased" the defense at Nock's deposition taken on August 7, 2024, "wherein Plaintiff was asked how he distinguished between calls purportedly made on behalf of Spring Energy with those purportedly made on behalf of Indra."  (Dkt. 255 at 5.)  In responding to defense counsel's questioning, Nock said that he could distinguish calls made on behalf of Spring and those on behalf of Indra because, *inter alia*, on at least some of the calls, the caller referred to

left an opening to argue at trial that telemarketing calls received by Nock may have been made on behalf of Indra but not Spring.  Were Defendants to make such an argument at trial, Nock's "empty-chair" concern is more than a chimera.  And, in that event, Nock may be able to invoke the alternative-liability theory.  Depriving him of that opportunity would be severely prejudicial to Nock.

As another changed circumstance, Nock focuses on evidence suggesting that Spring could go bankrupt and thereby diminish the likelihood of recovery in the event Defendants were to be found liable.  Nock's concerns are not entirely unfounded.  Spring's annual net income is under half a million dollars, and at least based on hearsay testimony of a former employee, Defendants may "bankrupt [Spring so no one [would] get anything out of it." (Dkt. 243-3 at 60:2-13.)  Nock argues that the class stands a better chance of recovery if the case is transferred and consolidated with *Savada*, because, in that case, Nock's attorneys named Richmond's investors as additional defendants.  (Dkt. 263 at 8-9.)

The Court is skeptical of that argument.  If Spring is found not liable, better prospects of recovery are irrelevant.  If, however, Nock succeeds, the prospect of better recovery is illusory.  Both Richmond and RRH are defendants in the instant case, as they are in *Savada*.  Nock alleges here that Richmond and RRH are directly and vicariously liable in addition to Spring.  If so, then again, Spring's financial status is inconsequential as Nock has not suggested that either Richmond or RRH are financially precarious or

---

the company on whose behalf the calls were made.  (*See* Dkt. 254-1 at 51:11-23, 53:9-23, 58:17-59:13.)  That Defendants asked Nock questions testing his ability to distinguish between calls cannot fairly be taken as notice that Defendants would dispute the absence of overlap between the two campaigns.

face potential bankruptcy.  On the other hand, if Richmond and RRH do not bear liability, Nock has not offered any reason why Richmond's investors would bear liability.[8]

In sum, Nock has overstated the extent and import of changed circumstances. Nonetheless, Defendants have validated Nock's empty-chair concern by not renouncing their "same-period" argument.

### 2.    The Interests Of Justice Favor Transfer

As explained above, even in the absence of changed circumstances, the interests of justice, such as severe prejudice to the plaintiff, may warrant granting a plaintiff's motion to transfer.  Nock has identified a potentially severe prejudice that he would suffer in the absence of transfer:  the empty-chair argument and not being able to take advantage of the alternative-liability theory.  But even if Nock were not prejudiced in that way, the interests of justice still would be served by transfer.

"There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided."  *Columbia Pictures Industries, Inc. v. Fung*, 447 F. Supp.2d 306, 309 (S.D.N.Y. 2006) (internal quotation marks omitted) (quoting *Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)).  Indeed, "courts consistently

---

[8] In pointing to Richmond's investors as potential sources of recovery, Nock cites a declaration from Defendants' former Vice President of Operations, Greg Hasiak, attesting to what Richmond's investors knew and expected, including that they were aware that Defendants' vendors disguised illegal telemarketing as door-to-door sales.  (Dkt. 233-78 ¶¶ 4-6.)  And, Nock is correct that "individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct."  *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232, 2016 WL 1271693, at *5 (S.D.N.Y. March 29, 2016).  But again, Nock has not described a scenario in which Richmond would not be liable but its investors would be.

recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy." *Williams v. City of New York*, No. 03-CV-5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531, 110 S. Ct. 1274, 1284 (1990) ("We have made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'") (alteration in original) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 21, 80 S. Ct. 1470, 1472 (1960)). "[T]he 'interest of justice' analysis only 'requires that the cases be related, not identical.'" *Jibowu*, 2024 WL 4753294, at *8 (quoting *Wald v. Bank of America Corp.*, 856 F. Supp.2d 545, 550 (E.D.N.Y. 2012)).

The overlap between the instant case, the *Nock-Indra* Action, and the *Savada* Action is self-evident. Nock is the named plaintiff in two of the actions, one against the Spring Defendants, the other against the Indra Defendants. Based on the allegations of his complaint, Savada qualifies as an unnamed putative class member in both the instant case and the *Nock-Indra* Action. (*See* Dkt. 250-2 ¶¶ 106-108.) Similarly, Nock qualifies as an unnamed putative class member in the *Savada* Action. (*See id.* ¶ 111 (providing same class definitions as those set forth by Nock).) Put another way, the *Savada* Action essentially incorporates both of Nock's actions. All else being equal, litigating the three actions separately is more expensive, time consuming, and resource intensive than if there were a single consolidated action in one venue. That is particularly so given that all three actions are putative class actions, which entail motions for class certification, payments to a class administrator, and coordination of notice to class members. In Nock's words, "one case is better than three" and will promote judicial economy, conserve

resources, reduce the burden on witnesses, and avoid the prospect of inconsistent decisions.  (Dkt. 263 at ECF 6.)

To be sure, all else is not equal.  Most significantly, as Defendants emphasize, the three cases are at quite different points in their development.  There has been no discovery in *Savada*.  There has been some discovery in *Nock-Indra*.  Here, discovery is over and Defendants' motion for summary judgment is fully briefed.  Defendants point to cases where motions to **consolidate** were denied given the disparities in advancement of the cases at issue.  *See, e.g.*, *KGK Jewelry LLC v. ESDNetwork*, No. 11-CV-9236, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) (Swain, J.); *SS&C Technologies Holdings, Inc. v. Arcesium LLC*, No. 22-CV-2009, 2024 WL 64781, at *4 (S.D.N.Y. Jan. 5, 2024); *Ruane v. County of Suffolk*, 923 F. Supp.2d 454, 461 (E.D.N.Y. 2013).  Defendants claim they will incur substantial prejudice from **consolidation** as a result.  (Dkt. 255 at 8.)  But they have not identified prejudice they would incur merely from **transfer**.

Defendants suggest that the real motivation for Nock's motion to transfer and consolidate is to take advantage of the procedural disparities by avoiding the current prospect of summary judgment in Defendants' favor and to obtain additional discovery in *Savada* that it did not obtain here.  If correct, such tactical machinations weigh against transfer and consolidation.  *See KGK Jewelry*, 2014 WL 7333291, at *3 (denying consolidation and stating that "[t]he Court also credits the … assertion that this motion appears to be a tactical maneuver … to re-open discovery in Action I"); *Universal Marine Medical Supply, Inc. v. Lovecchio*, No. 98-CV-3495, 1999 WL 441680, at *3 (E.D.N.Y. May 7, 1999) (rejecting plaintiff's motion to transfer in part because "[t]he facts that Universal relies on to establish that the circumstances have changed, however, are not

evidence of changed circumstances as much as evidence of a changed strategy"); *cf.* *Robertson v. Cartinhour*, No. 10-CV-8442, 2011 WL 5175597, at *5 (S.D.N.Y. Oct. 28, 2011) (Swain, J.) (granting defendant's motion to transfer in part because plaintiff's choice of forum "appears to have been principally a tactical maneuver to avoid the jurisdiction of the D.C. Court, and so should be accorded little deference").  Although Nock disputes Defendants' assertion, the timing of Nock's motion – filed only after Defendants moved for summary judgment – and its being filed in conjunction with Nock's motion to defer consideration of summary judgment so that he can obtain additional discovery (Dkt. 244) lend support to Defendants' view.

Nock, however, has pointed to procedural steps the Maryland court can take to mitigate the concerns raised by Defendants.  Nock acknowledges that he "is waiting for a ruling on Defendants summary judgment motion."  (Dkt. 263 at 6.)  He suggests that transfer (and consolidation) need not materially delay resolution of summary judgment because "it will presumably be the first order of business after transfer."  (*Id.* at 5.)  Further, "discovery in *Savada* could be (1) stayed until after a ruling on the pending summary judgment motion and (2) restricted to avoid any overlap with what has already been done in this case."  (*Id.* at 6.)  Regardless, ***transfer***, as distinct from consolidation, does not pose any substantial prejudice to Defendants.

At the same time, there are substantial benefits in efficiency and the interests of justice to be gained by transfer.  Maintaining separate overlapping class actions in two different districts undoubtedly will result in unnecessary duplication of efforts by the parties and the courts.  And, doing so presents the risk of inconsistent rulings.  Where, as here, allowing the cases to proceed in different courts presents the very real risk of inconsistent rulings and judgments on the same issues, the interests of justice weigh

strongly in favor of transfer. *See Zainfeld v. Vivid Seats, LLC*, No. 24-CV-1520, 2024 WL 2274920, at *3 (S.D.N.Y. May 20, 2024) ("Having two courts deciding the same issue poses an obvious risk of inconsistent judgments, not to mention a waste of judicial resources. Judicial economy and the interests of consistency [thus] strongly favor a single judge deciding both actions") Of course, if summary judgment were granted in Spring's favor in the instant case, then duplication of efforts and risk of inconsistent rulings would be diminished and perhaps eliminated. But that decision has yet to be made. And, if summary judgment were denied, the costs and risks would remain.

Defendants argue that this Court is already familiar with the instant case and that transferring it to a new judge who is not familiar with it will result in unnecessary duplication of costs and delay. There are two reasons why that argument does not fly in this particular case. First, the Maryland court already has familiarity with some of the underlying facts and parties given Nock's case against Indra, which implicates St. Louis and the same Pakistani Call Center. Second, a recent procedural development in this case fortuitously makes it an opportune time to transfer. Early on, this case was referred to the undersigned for pretrial management and proceedings. The undersigned has resolved many discovery disputes in the case and is therefore quite familiar with it. But summary judgment will be a decision made by the district judge, who has not referred dispositive motions for report and recommendation. Whether transferred or not, another judge will have to take a deep dive into the case. That is all the more so given the recent reassignment of this case to Chief Judge Swain; she will have to "come up to speed" no less – and perhaps more – than the Maryland court. Accordingly, transfer will not be wasteful or require any significant duplication of effort.

Defendants also contend that transfer is pointless because they plan to move to

dismiss the *Savada* Action pursuant to the "first-to-file" rule.  (Dkt. 255 at 8-9.)  "The first-filed rule states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority." *Scarola Ellis LLP v. Skyworks Ventures, Inc.*, No. 09-CV-10003, 2010 WL 3452381, at *4 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted) (quoting *New York Marine*, 599 F.3d at 112).  There are, however, two recognized exceptions: "(1) where the 'balance of convenience' favors the second-filed action, and (2) where 'special circumstances' warrant giving priority to the second suit." *Employers Insurance of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008); *accord New York Marine*, 599 F.3d at 112.  In arguing that the first-to-file rule does not preclude transfer here, Nock essentially invokes the same changed circumstances that he asserts warrant transfer.

Certainly, if the Maryland court dismissed *Savada* under the first-to-file rule, there would no reason to transfer this case.  But the Court cannot simply wait and see what happens in that regard.  The Maryland court has put things on hold there to first see what happens with the instant motion to transfer.  (*Nock-Indra*, Dkt. 93.)  The bottom line is that there are multiple contingencies dependent on resolution of multiple motions – transfer, dismissal, consolidation of *Nock-Indra* with *Savada*, and consolidation of this case with them.  It is most sensible, and will be most just, for one court to consider the issues together.  Having them considered by one court will be most efficient and will provide the best opportunity to eliminate the risk of inconsistent rulings.  The Maryland court is in the best position to do that, and the interests of justice substantially weigh in favor of transfer.

**B.    Other Transfer Factors**

The Court now turns to assessment of the other factors relevant to the motion to transfer.

**1.    Convenience Of Parties**

"The convenience of the parties favors transfer when transfer would increase convenience to the moving party without generally increasing the inconvenience to the non-movant." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 29 (S.D.N.Y. 2016); *accord Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 468 (S.D.N.Y. 2020) ("The convenience of the parties weighs in favor of transfer when it would increase convenience for the movant without decreasing convenience for the non-movant"). Conversely, "[w]here a transfer would merely switch the burden of inconvenience from one party to the other," the convenience of the parties "is essentially neutral." *American Steamship Owners Mutual Protection & Indemnity Association, Inc. v. Lafarge North America, Inc.*, 474 F. Supp.2d 474, 484 (S.D.N.Y. 2007) (internal quotation marks and citation omitted); *accord Penrose v. New York Life Insurance Co.*, No. 22-CV-2184, 2023 WL 6198249, at *5 (S.D.N.Y. Sept. 22, 2023) ("Ordinarily, [this] factor becomes neutral when transfer would merely shift the inconvenience from the non-movant to the movant").

The Defendants are all Delaware corporate entities located in New York.  Nock is a resident of Maryland.  In isolation, transfer merely would switch the inconvenience of Nock litigating in New York City (despite his original choice to do so) to Defendants litigating in Baltimore.  But if the case were transferred to Maryland, and if Nock's claims survived the currently pending summary judgment motion, and if the Maryland court decided to consolidate the case with either or both of the other Maryland cases, neither Nock nor Defendants would have to fight a two-front war.  Transfer thus holds out at least

the possibility of more convenience for the parties under that scenario. Defendants, however, do not view transfer as more convenient for them and plan to move to dismiss the *Savada* Action under the first-to-file rule, which, if successful, would avoid the two-front problem. (Dkt. 255 at 12, 14.)

Convenience of the parties thus rests on hypothetical outcomes of other motions. As such, the Court deems this factor to be neutral.

### 2.    Convenience Of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F. Supp.2d 282, 286 (S.D.N.Y. 2004); *accord AGCS Marine Insurance Co. v. Associated Gas & Oil Co.*, 775 F. Supp.2d 640, 647 (S.D.N.Y. 2011). However, for purposes of transfer, not all witnesses are created equal. "The convenience of non-party witnesses generally carries more weight than the convenience of party witnesses." *Id.* And, witnesses located outside the currently-venued district and the prospective transferee district generally carry less weight than witnesses within those districts. *Electrical Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, No. 07-CV-975, 2007 WL 2068107, at *4 (S.D.N.Y. July 19, 2007) ("Typically ... district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum").

Here, there are some potential non-party witnesses within one of the two most relevant districts – specifically, unnamed class members residing in Maryland – who could be called to testify. Nock identifies one such possible individual and argues that

convenience of those witnesses favors transfer to Maryland.[9]  (Dkt. 250 at 9-10.)  Of course, that was just as true when Nock filed the case in this District, and the prospect of bringing unnamed class members to New York obviously did not constrain him from doing so.

As with convenience of the parties, convenience of witnesses is also dependent on the outcome of other motions.  If *Savada* is not dismissed based on the first-to-file rule, then transfer and consolidation would save witnesses from having to testify in two actions in two different states.  If, however, the Maryland court were to dismiss the *Savada* Action, then witnesses will not face that prospect.  The Court finds this factor to be neutral.

### 3.    Relative Means

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed."  *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994).  Defendants, all corporate entities, likely have substantially more resources than Nock.  However, this is a class action case that no doubt is being pursued on a contingency basis.  (Nock did not say otherwise in reply to Defendants' noting the same.)  Moreover, means was no obstacle to Nock when he first filed in this District, nor during the two years he has litigated in this District.  Nor has he suggested, let alone demonstrated, any change in financial resources that would justify moving the case out of his first chosen venue.  As such, this

---

[9] Defendants fault Nock for failing to "indicate that any specific witnesses would be unwilling to testify in New York."  (Dkt. 255 at 12 (internal quotation marks omitted) (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp.3d 613, 619 (S.D.N.Y. 2016)).)  True.  But that speaks to availability of proof, not convenience; and, as discussed below, that factor is neutral.

factor is neutral. *See North Brevard County Hospital District v. C.R. Bard, Inc.*, 648 F. Supp.3d 401, 428 (N.D.N.Y. 2022) (even though defendant's resources dwarfed those of plaintiff, "the fact that [plaintiff] chose to litigate this matter far from its home and that the case is a putative nationwide class action, the Court finds that this factor is neutral"); *In re Nematron Corp. Securities Litigation*, 30 F. Supp.2d 397, 405 (S.D.N.Y. 1998) (although named plaintiffs and unnamed plaintiffs "are likely individuals who are suing a corporation that possesses considerably greater financial assets. … no showing has been made that litigating this action in [transferee state] would impose an undue hardship on the plaintiff class. Accordingly, this factor weighs neutrally in the overall analysis").

### 4.  Locus Of Operative Events

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Tianhai Lace USA Inc. v. Forever 21, Inc.*, No. 16-CV-5950, 2017 WL 4712632, at *4 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted) (quoting *Steck v. Santander Consumer USA Holdings, Inc.*, No. 14-CV-6942, 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015)).  "To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *AVEMCO Insurance Co. v. GSF Holding Corp.*, No. 96-CV-8323, 1997 WL 566149, at *6 (S.D.N.Y. Sept. 11, 1997) (internal quotation marks and citation omitted).

The operative facts here include Defendants' marketing operations and decisions made in New York, calls received by Plaintiff and unnamed class members in Maryland and possibly other states, calls made from Pakistan, and subcontractor operations in various states.  The locus of operative facts is diffuse but bends slightly toward New York. *See Geraci v. Red Robin International, Inc.*, No. 18-CV-15542, 2019 WL 2574976, at *4 (D.N.J. June 24, 2019) (transferring TCPA putative class action to Colorado and

describing the case as being "about a company headquartered in Colorado allegedly harming citizens throughout the nation by using technology in Colorado to effect marketing decisions made in Colorado").

### 5.    Relative Ease Of Access To Sources Of Proof

This factor is neutral.  The parties have not identified any proof that would be more or less accessible in one forum versus the other.  Moreover, discovery in the instant case is closed.

### 6.    Availability Of Process To Compel Witnesses

A district court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state.  Fed. R. Civ. P. 45(c)(1)(A).  As a result, one venue may be more conducive to compelling witnesses to testify than another.  However, "[w]here there are 'no allegations that any particular witnesses are unwilling to testify should this matter proceed to trial,' this factor is neutral." *Tianhai Lace*, 2017 WL 4712632, at *7 (quoting *In re Global Cash Access Holdings, Inc. Securities Litigation*, No. 08-CV-3516, 2008 WL 4344531, at *7 (S.D.N.Y. Sept. 18, 2008)).

Neither party identifies any witnesses unwilling to testify in either forum.  Nock mentions unnamed "class members (and possibly utility companies)," but does not identify anyone who would be unwilling to testify in New York and thus would be inaccessible.  (Dkt. 250 at 12.)  Nock also asserts that "[o]utside of [Defendants'] employees, there are no witnesses with relevant testimony in New York." (*Id.*)  That assertion is not consistent with the record.  For instance, in opposing Defendants' motion for summary judgment, Nock relies on testimony of two New Yorkers:  Neil St. Louis and Gregory Hasiak.  (*See* Dkts. 233, 233-9, 233-10.)  Nock has deposed those witnesses and perhaps will not call them live or expects one or both to willingly appear.  He does

not say.

Inasmuch as neither party has identified any witness unwilling to testify in either venue, this factor is neutral.

### 7.    Forum's Familiarity With Governing Law

This factor is neutral.  "'Familiarity with the governing law is generally given little weight in federal courts.'  This is particularly true when the governing law is a federal statute … which is equally familiar to all federal courts." *Flood v. Carlson Restaurants Inc.*, 94 F. Supp.3d 572, 580 (S.D.N.Y. 2015) (quoting *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp.2d 525, 531 (S.D.N.Y. 2004)). The primary law at issue is the TCPA, a federal statute.  The Maryland law invoked by Nock provides that a person may not violate the TCPA. Md. Code, Com. Law § 14-3201.  Courts in both Districts both are familiar and capable of applying the relevant law.  Neither party has argued otherwise.

### 8.    Trial Efficiency And Interest Of Justice

The concerns for trial efficiency and the interests of justice have been discussed above in the context of addressing Nock's choice of forum and changed circumstances. As concluded there, the interests of justice favor transfer.  Particularly given the contingencies turning on the outcome of motions for consolidation and dismissal pending before the Maryland court and the summary  judgment motion currently before this Court, transferring the instant case to the District of Maryland is the most sensible and efficient way to proceed and protects against the risk of inconsistent rulings.  Transfer also protects against the prejudice to Nock in the event Defendants continue to press their same-period argument and does so without imposing any significant prejudice on Defendants.  Other factors are neutral or just as dependent on the same contingencies.  Only the locus of operative facts slightly weighs against transfer but is far outweighed by the interests of

justice. Considering all the circumstances, the Court finds Nock has clearly and convincingly established that transfer to the District of Maryland is warranted.

### Conclusion

For the foregoing reasons, Plaintiff's application to transfer is granted. To the extent not discussed above, the Court has considered the parties' arguments and found them to be either moot or without merit.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 22, 2025
        New York, New York

Copies transmitted this date to all counsel of record.